Nov. Term,
1856.

THE COMMON
COUNCIL, OF
INDIANAPOLIS
v.
McLEAN.

*W. F. Lane* and *E. A. Greenlee,* for the appellant.

---

THE COMMON COUNCIL OF INDIANAPOLIS and Another *v.* McLEAN.

Exemptions from taxation are to be strictly construed.

The second specification of section 6 of the assessment and collection law of 1852, applies only to public property, and does not exempt from taxation property devoted to the use of a private school.

A private boarding-school is not a literary institution within the meaning of the fifth specification of the same section.

The fact that such an establishment is or is not incorporated, does not determine the question of its liability to or exemption from taxation, under the statute.

To be exempt, it must have the qualities specified in the seventh subdivision of the same section.

APPEAL from the *Marion* Circuit Court.

GOOKINS, J.—This was a proceeding by *McLean* against the common council and treasurer of the city of

Nov. Term,
1856.

THE COMMON
COUNCIL OF
INDIANAPOLIS
v.
McLEAN.

*Indianapolis*, to enjoin the defendants from the collection of a city tax levied upon the plaintiff's property. The Circuit Court granted the prayer of the complaint, and awarded a perpetual injunction, from which the city appeals.

The property assessed in the name of the plaintiff is described as the north half of lots numbered 1 and 2, in square numbered 35, valued at 7,500 dollars; personal property 700 dollars; tax for general purposes 32 dollars and 80 cents; for school purposes 16 dollars and 40 cents; total, 49 dollars and 20 cents.

The ground on which the real estate is claimed to be exempt from taxation is, that it is used for school purposes.

The proof is in substance as follows: There is on the ground a three story brick building sixty-six feet front and thirty-six feet deep, with a frame building in the rear, eighty feet in length and two stories high. Both buildings are devoted to school purposes. The school has an average attendance of from one hundred to one hundred and fifty scholars. In the frame building are two music rooms, a dining room, kitchen, and two or three small rooms. The plaintiff keeps a boarding and day school. A boarding-school for young ladies is more efficient and useful than such a school would be without a boarding department, and it is the almost universal practice to connect a boarding department with a school of this kind. The teachers mostly board in the institution. There are seven teachers. The average number of boarding scholars is about twenty. There is no part of the premises otherwise used than for purposes of instruction and rooms and boarding for pupils, teachers, and others necessarily connected with the establishment, and all the room used is necessary for those purposes. Musical instruments, chemical and philosophical apparatus, and a library are used. The seats are mostly attached to the floor; some chairs and settees are moveable. There is no other personal property that could be dispensed with in a school of this character. The pro-

Nov. Term,
1856.

THE COMMON
COUNCIL OF
INDIANAPOLIS
v.
McLEAN.

perty was all in the plaintiff's possession *January* 1, 1853. The plaintiff is the superintendent of the school, and is engaged in no other business. The plaintiff lives in the brick building with his family; has household and kitchen furniture worth 1,500 dollars. A woodhouse and stable are on the premises, which are convenient and necessary to the enjoyment of the school. The establishment belongs to the plaintiff, and is a private school.

The constitution requires that the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, scientific, religious, or charitable purposes, as may be specially exempted by law. Art. 10, s. 1.

The act providing for the assessment and collection of taxes, 1 R. S. p. 106, exempts certain property from taxation. The exemptions are contained in the sixth section, which is as follows:

"The following property shall be exempt from taxation:

"1. The real and personal property of the *United States* and of this State;

"2. Every school-house, court-house, market-house, poor-house, and jail, and the land whereon such buildings are situate, and all county lands and buildings set apart for county purposes;

"3. All fire engines, hose, hooks, ladders, and other apparatus for the extinguishment of fires, and all fire engine houses, with the land on which they may be situated, and all wharves, and all powder magazines, with the land on which they may be situated, belonging to or owned by any incorporated town or city in this State, and held by such town or city for the use, benefit, safety or convenience of the public;

"4. Every building erected for religious worship, and the pews and furniture within the same, and the lands

whereon such building is situate, not exceeding ten acres; also, every cemetery;

" 5. Every building erected for the use of any literary, benevolent, charitable, or scientific institution, or erected for the same purpose by any town, township, or county, and the tract of land on which such building is situate, not exceeding twenty acres; also, the personal property belonging to any institution, town, township, city, or county, and connected with or set apart for any of the purposes aforesaid;

" 6. All lands granted for the use of common schools, so long as the same shall remain unsold;

" 7. The personal property and real estate of every manual labor school or college incorporated within this State, when used or occupied for the purposes for which it was incorporated, such real estate not to exceed three hundred and twenty acres."

It is claimed that the property in question is exempted by the second and fifth sub-sections above quoted. We think otherwise. Exemptions from taxation are to be strictly construed. From the connection in which the word "school-house" is used in the second specification, we are satisfied that that clause was only intended to apply to public property. It exempts court-houses, market-houses, poor-houses, jails, and the county lands and buildings. If a tax were levied on these, the public would only tax their own property and pay the tax to themselves, which would be absurd. The same may be said of a school-house belonging to the people at large. It is a rule in the construction of statutes, that words found in the same connection may be referred to to ascertain the legislative intention. Smith's Com. 656, 657. In *Adams* v. *Bancroft*, 3 Sumn. 386, Mr. Justice *Story* applied the maxim *noscitur a sociis* to the interpretation of a statute by which a restricted meaning was given to words of general signification in the designation of species. So here, when every other species of property mentioned in the clause must be public property, and school-houses may be, and generally are, we

are to presume that they were, in the mind of the legislature in making the enactment.

The fifth subdivision exempts every building erected for the use of any literary, benevolent, charitable, or scientific institution. That all these qualities belong, in some degree, to every school where good morals, and instruction of any grade are inculcated, we do not doubt. They belong also to every well regulated family. But we think the exemptions here intended apply to distinct and well known classes. If the property in question belongs to either class, it is the literary. Is the school in question a literary institution? The word literary having no fixed legal signification, is to be taken in its ordinary and usual meaning. We speak of literary persons as learned, erudite; of literary property, as the productions of ripe scholars, or, at least, of professional writers; of literary institutions, as those where the positive sciences are taught, or persons eminent for learning associate, for purposes connected with their professions. This we think the popular meaning of the word; and that it would not be properly used as descriptive of a school for the instruction of youth. Although the profession of teaching is highly commendable and praiseworthy,—one which both our constitution and our laws are designed to encourage,—and although we doubt not the school in question is excellent in character and design,— yet it is a private enterprise, and cannot readily be distinguished from other honorable employments in which private capital is invested. We think that, as a general rule, is the true line of distinction. Such is the principle of the case of *Orr* v. *Baker*, 4 Ind. R. 86. We do not think the fact that the establishment is or is not incorporated, determines the question of its liability to or exemption from taxation. To be exempt it must have the other qualities specified in the 7th sub-section, above quoted.

It is insisted that although we should be of opinion that the real estate was liable to taxation, yet the judgment of the Circuit Court ought to be affirmed, because there was proved to have been personal property on the

premises whereof the taxes might have been levied.
That argument might prevail had not the Circuit Court
expressly adjudged that the real estate was exempt.
That was an error for which the judgment must be re-
versed.

*Per Curiam.*—The judgment is reversed with costs.
Cause remanded for further proceedings not inconsistent
with this opinion.

*N. B. Taylor* and *J. Coburn,* for the appellants (1).

*H. C. Newcomb* and *J. S. Harvey,* for the appellee (2).

(1) Counsel for the appellants cited the following authorities:

The meaning of a word may be ascertained by reference to the meaning of words associated with it. This is the means of ascertaining the intention of the legislature. See Broom's Legal Maxims, 450, 451, 456.— 2 Curtis, 465.—Smith's Com. 657.

In the case of *Adams et al.* v. *Bancroft,* 3 Sumn. 384, in relation to the revenue laws, Story, J., says, "That one of the best settled rules of interpretation of laws of this sort is, that the articles, grouped together, are to be deemed to be of a kindred nature and of-kindred materials, unless there is something in the context which repels that inference. *Noscitur a sociis,* is a well founded maxim applicable to revenue, as well as to penal laws."

This was a case in which the plaintiffs, *Adams* and others, contended that silk gloves from *Europe* were free of duty. *Bancroft,* the collector, insisted upon the payment of twenty-three per cent. duty.

The whole case turned upon the point, whether mitts and gloves in the second clause of the second section of the act of 1832, were composed of wool in whole or in part, or might be silk or other material. Out of some nineteen articles enumerated, four or five might be woolen or might not be, and gloves was in that number. All the rest were necessarily woolen, as broadcloths, &c.

The Court held, that although gloves might be silken, or of other materials, yet in the above clause they should be considered as woolen, since the other articles connected and named with them were woolen, and that the second clause did not refer to silk gloves.

The Court further said, that the words in the 15th clause of the section which related to "all manufactures of silk," covered silk gloves, that that clause was repealed, and so the articles were duty free.

"The true theory of taxation is to assess all property protected by the law, in proportion to its value.    *    *    *    *    Exemptions, as they are contrary to common right, are not to be favored by the courts. They should be confined to the specified objects, and to such as by reasonable intendment the legislature must have had in contemplation. In short, the statute which exempts persons or property from taxation, is to be construed strictly." Stuart, J. in *Orr* v. *Baker,* 4 Ind. R. 86.

Nov. Term,
1856.