# IN SPECIAL TERM, 1871.

DELOSS ROOT *v.* FRANK ERDELMYER, Treasurer of Marion County, *et al.*

Prayer for Injunction, to restrain the County Treasurer from enforcing payment of taxes on bank stock.

*School Law—Trustees under, duty of—Taxes under, classification of—Municipal purposes, term defined, and applied—Township Trustees, tax levied by.*

A special school tax levied pursuant to Section 12 of the School Law of March 6, 1865, does not exempt bank stock by virtue of Section 9, of the Bank Tax Act approved March 15, 1867, which provides that: "Nothing in this, or any other act shall be so construed as to authorize the taxation of stock in the Bank of the State of Indiana, or in any National Bank, for municipal purposes."

The term "municipal purposes," as used in that Act, has no application to township taxes, nor to special school taxes levied by trustees of townships, or by school trustees of incorporated cities, as special school taxes, under the authority conferred by Section 12, *supra* of the Act of 1865.

Such taxes are levied pursuant to the general law of the State, and for purposes connected with the general internal administration of the State,

or to carry out the general common school system, and do not come within the definition of municipal taxes.

*S. E. Perkins,* for plaintiff.

*Barbour & Jacobs,* for defendants.

NEWCOMB, J.—The plaintiff alleges that he owns stock in the First National Bank of Indianapolis, to the amount of $48,000, and on behalf of himself, and all others interested in the questions presented, he files his complaint, praying an injunction to restrain Erdelmyer, as County Treasurer, from enforcing payment of the following taxes charged against plaintiff's said bank stock on the tax duplicate of Marion County for the year 1870, namely:

*First,* The township tax levied by the Trustee of Center Township.

*Second,* A special school tax of twenty-five cents on each $100, alleged to have been levied by the city of Indianapolis; and

*Third,* A tax of twenty cents on each $100 of taxables, levied by the Commissioners of Marion County, pursuant to a popular vote of the electors of the Township, as a donation to aid in the construction of the Indiana, and Illinois Central Railroad, on certain specified conditions.

The grounds on which the plaintiff bases his complaint are:

That the township, and special school taxes are levied for municipal purposes, and by law his bank stock is not taxable for those purposes.

*Second,* As to the railroad tax; that the statute authorizing it is unconstutional. That the railroad company is not constructing, and does not intend to construct said road through Center Township, nor through any of the counties of this State east of the line of counties bordering on the State of

Root *v.* Erdelmyer *et al.*

Illinois; and further, that the election at which the donation was voted, was not conducted according to law.

None of these objections against the railroad tax were insisted on in argument, except that going to the constitutionality of the tax.

The defendants demur to the complaint, and assign for causes of demurrer—

*First,* That the Court has no jurisdiction to enjoin the collection of taxes by the County Treasurer.

*Second,* That the complaint does not set forth sufficient facts to constitute a cause of action.

*Third,* That there is a misjoinder of parties defendant.

Counsel for defendants dispute the power of the Court to enjoin the collection of taxes in any case, and various decisions of the courts of other States are cited to support their view of the question; but it is sufficient to say that in Indiana the decisions are the other way. Our Supreme Court, in a long line of cases, beginning with that of *The State Bank of Indiana* v. *The City of Madison,* 3 Ind., 43, and ending with *Turner* v. *The Thorntown and Mechanicsburg Gravel Road Company,* decided November 30, 1870, has tacitly recognized, or expressly asserted this power as belonging to the Courts of this State exercising equity jurisdiction; and in the latter case the Court say, in so many words—" Equity will enjoin the collection of a void tax."

These authorities dispose of the question of jurisdiction.

The taxation of shares of stock in national, and other banks in this State, is governed by an Act of the General Assembly, approved March 15, 1867, the first section of which is as follows: " The shares of capital stock owned, or held by any person, or body corporate, in any bank, or banking association chartered, or organized under the laws of the United States, and having its banking house, or place of business in this State, shall be included in the valuation of the personal property of the owner thereof for taxation, and

shall be taxed at the place where such bank or banking asso-ciation is, or may be located, at the same rate that is, or may be assessed on other taxable property in the hands of indi-viduals in this State."

The second, and third sections prescribe the manner in which the County Auditor may obtain a statement of the stockholders of such banks, with the amount, and value of the shares by them owned respectively; and the third section provides that, after receiving such statement, "the Auditor shall proceed to enter the names of the stockholders of such bank, or banking association on the tax duplicate of the current year, and the amount, and value of stock held by such stockholder, respectively, and shall assess thereon to the owner, or holder thereof, the proper amount of taxes, accord-ing to the rate that may at the time be chargable on other moneyed capital, and personal property subject to taxation; and if any such stockholder shall be assessed on said dupli-cate for either real, or personal property other than such stock, the amount and value of his said stock shall be added to his assessment as personal property."

By Section 8, of an Act approved February 18, 1859, 1 G. & H., 638, it is provided that the Township Trustee " shall, at the March session of the County Board annually, with the advice and concurrence of the County Commis-sioners, levy a tax on the property of such township for Township, road, and other purposes, and report the same to the County Auditor, who shall enter the same on the proper tax duplicate, in a seperate column, or columns, and that the Treasurer shall collect it the same as other taxes are collected. But in case of the failure of such Commissioners and Trus-tee to concur, then the Board of County Commissioners shall determine upon, and levy such Township, road, and other taxes."

It was by virtue of this statute that the township tax complained of was levied.

Root *v.* Erdelmyer *et al.*

The special school tax, as shown by exhibits filed with the complaint, was levied by three school trustees, chosen by the Common Council of the City of Indianapolis, in obedience to Section 5 of the School Law of March 6, 1865. That section is mandatory, leaving no discretion in the Council; nor has the Council any authority over, or control of the trustees so chosen, further than to require an annual report of their receipts, and disbursements.

The *fourth* section of that law makes "each civil township, and each incorporated city in the several counties of this State a distinct municipal corporation for school purposes, by the name, and style of the civil township, town, or city corporation," etc.

It is proper to remark here that the Common Council of a city has no agency, or authority in levying the special school tax, nor any control of its disbursement. The tax levied by the trustees is expended by them for the building, and repair of school houses, and in paying the expenses of the common schools, other than for tuition, which is provided for by a general State tax. No part of the general, or special school tax goes into the city treasury.

The *tenth* Section of the school law requires the trustees "to build, or otherwise provide suitable houses, furniture, and apparatus, and other articles, and educational appliances necessary for the thorough organization, and efficient management of said schools." This duty is imperative. The trustees may not in their discretion furnish, or not furnish school houses, furniture, etc., to the extent necessary for a "thorough organization, and efficient management of the schools." The only discretion they have is as to the style, and character of the houses, etc., and the amount of money that shall be expended on them beyond furnishing comfortable quarters for pupils, and the needful appliances for making the schools efficient.

To enable the trustees to perform the duties so imposed

upon them, the *twelfth* Section of the same statute clothes them with power to levy a special tax, as follows:

"The trustees of the several townships, towns, and cities shall have power to levy a special tax, in their respective townships, towns, or cities, for the construction, erecting, or repairing of school houses, providing furniture, school apparatus and fuel therefor, and the payment of other necessary expenses of the school, except tuition, but no tax shall exceed twenty-five cents on each one hundred dollars of taxable property, and fifty cents on each poll, in any one year, and the income from such tax shall be denominated the special school revenue."

The *thirteenth* Section requires that "the County Auditor shall, upon the property and polls liable to taxation for State and County purposes, make the proper assessments of special school tax levied by the trustees, in the same manner as for State, and County revenue, and shall set down the amount of said tax on his tax list, and duplicate thereof, as other taxes are set down, in appropriate columns," etc.

On these statutes there can be no question that the plaintiff's bank stock is liable to pay the township, and special school taxes assessed upon it, unless there is some other statute exempting it. The *thirteenth* Section of the school law expressly declares that all property liable to State, and County taxation shall be assessed for this special school tax; and the clear meaning of the statute imposing a township tax is that it shall be levied on all the property of the township assessed upon the tax duplicate of the County for taxation for State, and County purposes.

But it is claimed, and the proposition has been argued with much earnestness, and ability by plaintiff's counsel, that bank stock is exempted from these taxes by the *ninth* Section of the Act of 1867, above cited. That Section reads as follows: "Nothing in this, or any other act, shall be so construed as to authorize the taxation of stock in the Bank

of the State of Indiana, or in any National bank for munici-
pal purposes."

The determination of this controversy must depend there-
fore upon the proper construction of the phrase, "municipal
purposes," as used in the Section last quoted. The words,
"municipal," "municipality," and "municipal law," have two
well understood legal meanings—one general, the other
limited, or particular. In relation to the Commonwealth of
nations, a separate, independent State is a municipal organi-
zation, and its laws are denominated municipal laws, as
contra-distinguished from the law of nations.

Relatively to the State, all its minor sub-divisions of coun-
ties, townships, school districts, etc., are sometimes termed
municipal corporations, and sometimes *quasi* corporations, or
bodies politic, and corporate. Lastly, we have towns, and
cities, incorporated by special acts of legislation, or by gen-
eral laws passed for that purpose, and clothed with many
powers, and privileges not belonging to the people of the
State at large. The following citations from standard legal
works will illustrate the varied uses, and meaning of
these terms. In Bouvier's Law Dictionary they are defined
thus:

"Municipal: Strictly this word applies only to what
belongs to a city. Among the Romans, cities were called
*municipia.* These cities voluntarily joined the Roman
Republic in relation to their sovereignty only, retaining their
laws, their liberties, and their magistrates, who were thence
called *municipal magistrates.* With us the word has a more
extensive meaning; for example, we call municipal law, not
the law of a city only, but the law of the State. *Bl. Com.*
Municipal is used in contradistinction to international; thus
we say an offense against the law of nations is an interna-
tional offense, but one committed against a particular, or
separate community is a municipal offense."

"Municipality: The body of officers, taken collectively,

belonging to a city, who are appointed to manage the affairs, and defend its interests."

In Wharton's Law Dictionary is this definition:

" MUNICIPAL LAW: That which pertains solely to the citizens, and inhabitants of a State, and is thus distinguished from political law, commercial law, and the law of nations. It is now, however, more usually applied to the customary laws that obtain in any particular city, or province, and which have no authority in neighboring places."

In Walker's American Law, 219, it is said: " Public corporations are those which are founded with public means, and for public purposes. Their criterion is, that no individual has any interest in their foundation, except as a member of the general body politic. To this class belong all municipal corporations, beginning with the United States, and descending down through States, Counties, Townships, school districts, and the like. These are for the most part denominated *quasi* corporations, since, with the exception of cities and boroughs, they require no special act of incorporation. They possess scarcely any other corporate properties than those of holding property, and being parties to suits." See also *Angel & Ames on Corporations*, Sections 15, 23.

Burrill's Law Dictionary thus defines these terms:

" MUNICIPAL: Belonging to a city, town, or place having the right of a local government; belonging to, or affecting a particular, or separate community. Local; particular; independent."

" MUNICIPAL CORPORATION: (Lat., *villa corporato*,). A public corporation; a corporation created by government for political purposes, and having subordinate legislative powers to be exercised for local purposes, such as a county, city, town, or village. 2 Kent., 275."

" MUNICIPAL LAW: The rule of law by which a particular district, community, or nation is governed. The particular law of a State, or nation, as distinguished from

public, or international law. A rule of civil conduct prescribed by the supreme power in a State."

" In a strict sense, the law of a particular place, such as a city, or town. Originally the law of a *municipium*, or free town."

" MUNICIPIUM: A free, or privileged town; one that had the right of being governed by its own laws, and customs. Hence the Latin *municipalis*, and English municipal."

Now, in what sense did the Legislature use the word " municipal" in the Act of 1867? Not in its most general sense, certainly; because, in that sense, the State itself being a municipal corporation, the exempting clause would nullify the rest of the Act, and no tax could be levied on bank stock for State purposes. Was it intended to exempt bank stock from taxation for county purposes? That is not alleged in the complaint, nor during the four years this law has been in force has such a proposition been advanced by any stockholder of any bank, so far as our court reports furnish evidence on that point. But if county taxes are not imposed for municipal purposes, how can it be said that township taxes come under that denomination? If the township is a municipal corporation, so is the county; and it seems to me that if township taxes are prohibited under the 9th Section of the Act of 1867, county taxes must come under the same prohibition.

It is manifest that to give the Act of 1867 any effect, or force whatever, we must use the word "municipal" in its primary, and strict sense—giving it that construction, State taxes are excluded from the exemption clause, and so, I think, are all other taxes except those levied by incorporated towns, and cities. This follows from the definitions of the term before cited, and from the inoperative character of the statute on any other construction.

But there are additional arguments drawn from other statutes, in favor of giving the words " municipal purposes"

this limited interpretation. In the nomenclature of our tax laws it is believed there is not a single instance in which a tax levied for county, township, or school purposes is called a municipal tax, or a tax for a municipal purpose. On the contrary, each of these taxes has a statutory name. A tax levied for State purposes is called in the statute a state tax; for county purposes, a county tax; for township purposes, a township tax; for school purposes, the general, or special school tax, as the case may be; and such had been the case long prior to the enactment of the statute of 1867. This method of distinguishing by name the various taxes, was well known to the Legislature, and it must be presumed that if they had intended to shield bank stock from either of these ordinary taxes, they would have used apt, and unequivocal words to express such intent.

*Second,* Wherever in previous statutes this phrase, "municipal purposes," has been used, its application solely to incorporated towns, and cities is patent. Two instances of this sort have come under my observation—one in an Act of the General Assembly, the other in the Constitution of the State. The former is found in the Act chartering the Bank of the State of Indiana, approved March 3, 1855, the 15th Section of which reads as follows: "The capital stock of said bank shall be subjected to the same rate of taxation for State, and County purposes as the stock of other moneyed corporations; and the real estate, and other property of said bank, and branches, *situated in any city, or town,* shall be taxable *for municipal purposes,* in the same manner as other property so situated, but the capital stock of said bank, or branches shall not be taxable for municipal purposes." It needs no argument beyond the reading of this Section to show that "municipal purposes," as there used, means the purposes of the city, or town in which the bank is situated.

The other instance of the use of this phrase occurs in the fourth clause of the Schedule of the Constitution of 1851,

namely: "*All Acts of incorporation for municipal purposes*
shall continue in force under this Constitution, until such
time as the General Assembly shall in its discretion, modify,
or repeal the same."

When we consider that prior to the Constitution of 1851,
all the cities of the State were operating under special
" Acts of incorporation," and that many towns sought, and
obtained from the Legislature special charters, instead of organ-
izing under the general law for the incorporation of towns,
it is apparent that the term "municipal purposes," as used
in the above quoted clause of the Constitution, had refer-
ence to Acts incorporating cities, and towns, and that it had
no other application. It could have no reference to pre-
existing laws organizing counties, and townships, for those
civil sub-divisions of the State had already been recognized,
and continued by Article VI of the Constitution, and by the
first clause of the Schedule, which continued in force all
laws not inconsistent with that Constitution.

As by Section 13, of Article XI, the General Assembly
was thenceforth prohibited from passing special Acts of
incorporation, and by the 23d Section of the Bill of Rights,
it was provided that the General Assembly should not grant
to any citizen, or class of citizens, privileges or immunities,
which upon the same terms would not belong equally to all
citizens, the fourth clause of the Schedule was, we may
assume, adopted for the purpose of removing any doubts
which might otherwise exist as to the continuance of city,
and town organizations under charters then existing.

*Third.* I am further impressed with the correctness of the
construction I have given to the term "municipal purposes,"
by the ruling of our Supreme Court touching special exemp-
tions of property from taxation. "These exemptions," said
the Court, in *Orr* v. *Baker*, 4 Ind., 88, "as they are contrary
to common right, are not to be favored by the Courts. They
should be confined to the specified objects, and to such as by

reasonable intendment the Legislature must have had in contemplation. In short, the statute which exempts persons, or property from taxation is to be construed strictly." To the same effect is *The Common Council* v. *McLean*, 8 Ind., 328.

Following this rule, the word "municipal" in the Bank Tax Act, must be given its primary and strict meaning.

The complaint in this case is based on the theory that, because the township, and special school taxes are disbursed in the localities where they are collected, therefore they are necessarily municipal in their character, and the purposes for which they are levied, are municipal purposes. This seems to me an erroneous view of our township organization. Townships are civil divisions of the State, and an essential feature in its internal administration. No special powers, or privileges are granted to citizens of one township over another. The township can not legislate; every township tax is levied to enable the proper officer to execute some general law of the State, in the enactment of which the township, as such, has no' voice. The State provides that certain duties, regarded as essential to its proper internal administration, shall be performed by officers chosen by the voters of a township, and empowers the township trustee, under the supervision of the County Commissioners, to tax the property of the inhabitants of the township to raise the necessary means. The State is the governing power in the township, and the taxes levied under the name of township taxes, are, in my judgment, levied for State purposes. In Chapter 1, Part 1, of the Revised Statutes of 1843, townships are treated, and recognized as civil divisions of the State, and as a part of its internal administrative machinery, and the same character is given them by Article VI of the Constitution of 1851.

The case is even stronger against the plaintiff's theory of the character of the special school tax. This can not properly be termed a tax for municipal purposes, unless the State

tax proper is to be classed under that head.　This tax, and the duties of the trustee in connection therewith, are integral, and necessary features of the common school system of the State, without which the system itself could have no existence.　The Constitution requires the General Assembly "to provide by law for a general system of common schools wherein tuition shall be without charge, and equally open to all."　In obedience to this mandate the General Assembly has established a system of common schools throughout the State.　It has provided, by a general and uniform tax for the expenses of tuition, and has delegated to the trustees of civil townships, and incorporated cities the power, and made it their absolute duty, to levy and collect taxes within their jurisdiction to furnish the necessary school houses, furniture, apparatus, &c., necessary for the thorough organization, and efficient management of the schools."　The trustee has no legislative power, indeed he has no discretionary power as to whether he will, or will not provide the houses necessary for the schools in his township.　His duty is mandatory; his discretion can only be exercised, within reasonable limits, in the matter of style, cost, quality of the buildings, and other appliances he is required to provide.　In performing his duties, the trustee is executing a general law of the State, and administering an essential part of the common school system of the State. For this, as well as for the other reasons given, I hold that the special school tax is not levied for municipal purposes, within the purview of the Bank Tax Law of 1867.

I have grave doubts of the constitutionality of the Act of the Legislature under which the railroad donation tax was levied.　It is difficult to reconcile with our theory of government the imposition of a public tax upon the willing, and unwilling, to raise a fund to be turned over as a gift to a private corporation.　But a matter of so much gravity as this ought not, I think, to be passed upon, at least adversely

to the validity of the statute, by one only of the three Judges comprising this Court. I will, therefore, *pro forma*, sustain the demurrer to the complaint, and let this question go on appeal to the General Term, with the other legal questions in the case, if the plaintiff shall desire to take the opinion of the full bench on any, or all of them.

---

NOTE.—On appeal to the General Term, Judge Rand declined to sit, for the reason that he was interested as a holder of National Bank stock. The judgment at Special Term was affirmed *pro forma*, by the other two Judges, without a written opinion. Thereupon the plaintiff appealed to the Supreme Court, where the judgment of the Superior Court was in all things affirmed. —REP.