## HYATT & Others *v.* VINCENNES NATIONAL BANK, & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Submitted January 27, 1885.—Decided March 2, 1885.

In 1874, B conveyed to H, for a term of 50 years, all the mineral coal upon and under a described tract of land, in Knox County, Indiana, with the exclusive right to enter on the land to dig for the coal, and remove it, and to occupy with constructions and buildings, as might be necessary and useful for the full development and enjoyment of the advantages of the coal, H to have the right to remove all buildings or fixtures placed on the land, when the agreement should expire, and to pay a fixed royalty for the coal mined. Under a judgment against H, the sheriff of Knox County sold, on execution, to the judgment creditor, at the court-house door, in that county, in the manner prescribed by statute for the sale of real estate, the interest of H in the term of years, and certain buildings and articles belonging to him, which were a part of the structures and machinery for operating a coal mine on the land, and which were firmly attached to the land. In a suit in equity brought by the purchaser against another judgment creditor and the sheriff, to enjoin interference with the property so purchased : *Held*, That, under the Revised Statutes of Indiana, of 1852, 2 Rev. Stat., part 2, chap. 1, Act of June 18, 1852, vol. 2 of Davis' edition of 1876, art. 24, sec. 526, p. 232, and art. 22, secs. 463, 466 and 467 (as amended February 2, 1855), pp. 215, 217, the sale of the property as real estate was valid.

The Vincennes National Bank, of Vincennes, Indiana, and the Washington National Bank, of Washington, Indiana, having severally recovered judgments against William Helphenstine and others, composing the firm of William Helphenstine & Co., issued executions thereon, under which, and under an execution on another judgment, the sheriff of Knox County, Indiana, at the court-house door, in Vincennes, in that county, on a notice advertised for three weeks successively in a weekly newspaper, and notices posted as required by law for twenty days, offered at public sale the rents and profits, for a term not exceeding seven years, of certain real estate and chattels real on which he had levied, and, having received no bid for such rents and profits, exposed to public sale the fee simple of the

real estate and chattels real and the improvements thereon, to wit, " one engine and boiler and hoisting-machine, steam pump, Fairbank's railroad scales, wagon scales, four screens, black-smith's shop, one office building, one engine-building and dump-house, one stable, one lime-house, two dwelling-houses, track in coal mine, railroad track, switches, and all fixtures belonging to the coal mine on said real estate and leasehold." The levy and sale included the interest of the judgment debtors for the residue of terms of years unexpired under certain mining leases of real estate, embracing that covered by the Bunting agreement hereinafter mentioned. The two banks became the purchasers, at the sale, on June 9, 1877, and received a certificate, which stated that they would be entitled to a deed unless the property should be redeemed within one year from the date of the sale.

On the 25th of December, 1877, they filed a bill in equity, in the Circuit Court of the United States for the District of Indiana, against the members of the firm of William Helphenstine & Co., and the members of the firm of Hyatt, Levings & Co. The latter were judgment creditors of William Helphenstine & Co. The object of the suit was to restrain interference with the purchased property. The bill was afterwards amended, by making the sheriff a defendant, and by alleging that Hyatt, Levings & Co. had caused a levy to be made, under an execution on their judgment, on iron rails and other property, which Helphenstine had detached, and on articles which constituted a part of the machinery for operating the mine, and which were firmly attached to the real estate and leasehold, and were part of the property so purchased by the plaintiffs.

The question in the case arose in respect to an agreement or lease in writing, executed by one Bunting and his wife and William Helphenstine & Co., in July, 1874, by which the former conveyed to the latter, their heirs, successors and assigns, for a term of fifty years, " all the mineral coal, iron ore, fire and potter's clay, limestone, building stone, and other minerals, upon and under the farm or tract of land " described, with the exclusive right to enter on the land to dig for the articles named, and, when found, to remove the same from

the land, "together with all rights and privileges incident to mining and securing the minerals aforesaid, including the right of ingress and egress, and to dig, bore, mine, explore and occupy with constructions and buildings, as may be necessary and useful for the full development and enjoyment of the advantages of said coal and other minerals as aforesaid." The lessees were given "the right to remove all buildings or fixtures placed on said land when said agreement has been forfeited or may have expired;" and they were to pay fixed royalties for the articles mined and removed.

The answers of Helpheristine & Co., and of Hyatt, Levings & Co., averred that the property in question was personal property, situated fifteen miles distant from the court-house of the county, and was used in and about the operation of the mine under the mining contract.

Before the hearing the parties stipulated in writing, "that the plaintiffs are entitled to a decree as prayed for, unless the property sold should have been sold as personal property, as provided for by the statutes of the State of Indiana; that the sheriff's sale was made at the court-house door, in the city of Vincennes, in Knox County, and more than twelve miles from the property." The Circuit Court entered a decree, that, by virtue of their purchase, and the certificate thereof, the plaintiffs became the equitable owners, subject to the right of redemption, "of the real estate, fixtures, machinery, and chattels real," which the decree went on to describe; and of the right, title and interest of William Helphenstine & Co., being the residue of terms of years unexpired under certain mining leases of specified real estate, including that covered by the agreement with the Buntings; that on said land and leaseholds were situate and sold, as aforesaid, to the plaintiffs, the chattels real before described as sold to them; and that the sheriff had levied on property which, at the time of the sale to the plaintiffs, was annexed to and constituted part of said real estate and chattels real, and was part of the property sold to the plaintiffs, and intended to sell it. The decree enjoined the defendants from selling the property so levied on. Subsequently the defendants moved to modify the decree by striking

out so much as enjoined the sheriff from selling the machinery, buildings, fixtures and improvements situate on the premises held under the agreement with the Buntings, because they were personal property when levied on under the execution of the plaintiffs, and the sale was void because they were not sold as personal property but as real property, and the plaintiffs acquired no title under the sale made at the court-house door. The motion was overruled. The defendants appealed to this court, setting forth, in their petition of appeal, that they appealed from that part of the decree which related to the machinery, buildings, fixtures and improvements situated on the Bunting premises and held under the Bunting agreement, on the ground that it was personal property and not real estate, and was not sold as personal property, in the presence of the officer making the sale.

*Mr. Addison C. Harris, Mr. William H. Calkins* and *Mr. William Armstrong* for appellants.—In Indiana, if the officer making a sale under execution, violates any requirement of the statute, the sale is void. And if the plaintiff is the purchaser he is chargeable with notice of all irregularities. *Doe* v. *Collins*, 1 Ind. 24; *Hamilton* v. *Burch*, 28 Ind. 233; *Piel* v. *Brayer*, 30 Ind. 332; *Read* v. *Carter*, 1 Blackford, 410; *Davis* v. *Campbell*, 12 Ind. 192; *Lachley* v. *Cassell*, 23 Ind. 600; *Whishuand* v. *Small*, 65 Ind. 120. If the interest of Helphenstine & Co. under the lease was real estate, we concede that the defendants in error acquired title by the sale. If it was not real estate, they acquired no title. The lease contains no words of inheritance. It simply gives a right of entry, to search for coal, to mine it if found, and to appropriate the produce on payment of the stipulated rent. The lessees acquired no property in the coal until its severance from the land. *Knight* v. *Indiana Coal & Iron Co.*, 47 Ind. 105; *McDowell* v. *Hendrix*, 67 Ind. 513. In Indiana a leasehold is personal property. In 1821 the Supreme Court held that a term of years on the death of a lessee, passed to his personal representative. *Duchane* v. *Goodtitle*, 1 Blackford, 117. In 1842 it was decided that under an act authorizing an execution from a justice's court to become

a lien on personal property, a sale of a term of years by a constable was valid. *Barr* v. *Doe*, 6 Blackford, 335. In 1860 it was again decided that a lease for a term of years is personal property. *Cade* v. *Brownlce*, 15 Ind. 369. See also *Meni* v. *Rathbone*, 21 Ind. 454, decided in 1863; *Smith* v. *Dodds*, 35 Ind. 452, decided in 1871; and *Schee* v. *Wiseman*, 79 Ind. 389. The latter case related to a lease of a mining estate for a term of twenty years. The court say, "The leasehold estate was personal property." See also *McCarty* v. *Burnett*, 84 Ind. 22, 26, decided in 1882. So things set up for purposes of trade, under an agreement that they may be removed, are personal property: *Cromie* v. *Hoover*, 40 Ind. 49, 56; *Young* v. *Baxter*, 55 Ind. 188, 192; *McCarty* v. *Burnett*, 84 Ind. 22. It would seem to follow, without further discussion, that the mining fixtures in dispute were personal property, and that the sale of them as real estate was void. The answer made to this is: That the statutes of Indiana, then in force, regulating sales on execution, direct this class of personal property to be sold as real estate. If this is correct, and this leasehold was real estate, the owner was entitled to keep possession for one year with a right of redemption during that time. In construing a Michigan statute, similar to the Indiana law, in a case where a term of years had been sold on execution as real estate, the Supreme Court of that State said: "A sale on execution is designed to produce the best price which can be obtained; and a sale on condition that no title shall vest for fifteen months, would, under ordinary circumstances, render a lease nearly valueless, besides involving the danger of forfeiture. No bidder would give for the shortened term the value of the full term." *Buhl* v. *Kenyon*, 11 Mich. 249. A judgment lien is a creature of statute, and may be imposed upon personal property as well as real estate. *Brown* v. *Clarke*, 4 How. 4, 12. But when imposed, sale under execution must be made in accordance with the statutory regulations imposed on that class of property.— Further reference is made to § 526 of the Code, which says, "The following real estate shall be liable  .  .  .  to be sold on execution  .  .  .  '5th all chattels real of the judgment debtor.'" But this does not enact that chattels real shall be

advertised in the same manner and sold at the same place as real estate. It declares that terms of years were still subject to attachment and execution. This was re-enacting the law, before in force, by which they could be taken and sold under a common-law writ.

*Mr. F. W. Viehe* for appellees.

Mr. Justice Blatchford delivered the opinion of the court. He recited the facts as above stated, and continued:

The only question for decision is, by the stipulation of the parties, whether the property in question should have been sold in the manner in which personal property was required by the statute of Indiana to be sold.

The statute in force at the time, in regard to the sale of personal property on execution, 2 Rev. Stat. of Indiana, of 1852, part 2, ch. 1, act of June 18, 1852, art. 22, §§ 468, 469, vol. 2 of Davis' edition of 1876, p. 218, provided as follows: " Sec. 468. Previous notice of the time and place of the sale of any personal property on execution shall be given for ten days successively, by posting up written notices thereof in at least three of the most public places in the township where the sale is to be made. Sec. 469. Personal property shall not be sold unless the same shall be present and subject to the view of those attending the sale; and it shall be sold at public auction in such lots and parcels as shall be calculated to bring the highest price."

The Revised Statutes of Indiana, of 1852, in force at the time, in regard to the sale of real estate on execution, 2 Rev. Stat., part 2, ch. 1, act of June 18, 1852, vol. 2 of Davis' edition of 1876, provided as follows, Art. 24, § 526, p. 232: " Sec. 526. The following real estate shall be liable to all judgments and attachments, and to be sold on execution against the debtor owning the same, or for whose use the same is holden, viz.: *First.* All lands of the judgment debtor, whether in possession, reversion or remainder. *Second.* Lands fraudulently conveyed with intent to delay or defraud creditors. *Third.* All rights of redeeming mortgaged lands; also, all

lands held by virtue of any land-office certificate. *Fourth.* Lands, and any estate, or interest therein, holden by any one in trust for, or to the use of, another. *Fifth.* All chattels real of the judgment debtor." Art. 22, § 463, p. 215: "Sec. 463. The estate or interest of the judgment debtor in any real estate shall not be sold on execution, until the rents and profits thereof, for a term not exceeding seven years, shall have been first offered for sale at public auction; but, if the same shall not sell for a sum sufficient to satisfy the execution, then the estate or interest of the judgment debtor shall be sold by virtue of the execution." Art. 22, § 466, p. 217: "Sec. 466. Real estate, taken by virtue of any execution, shall be sold at public auction at the door of the court house of the county in which the same is situated; and, if the estate shall consist of several lots, tracts, and parcels, each shall be offered separately; and no more of any real estate shall be offered for sale than shall be necessary to satisfy the execution, unless the same is not susceptible of division." Art. 22, § 467, as amended February 2, 1855, p 217: "Sec. 467. The time and place of making sale of real estate, on execution, shall be publicly advertised by the sheriff, for at least twenty days, successively, next before the day of sale, by posting up written or printed notices thereof, in three public places in the township in which the real estate is situated, and a like advertisement at the door of the court-house of the county; and also by advertising the same, for three weeks successively, in a newspaper printed nearest to the real estate, if any such newspaper be printed within the jurisdiction of the sheriff."

In the rules prescribed by the act, Art. 48, § 797, p. 313, vol. 2 of Davis' edition of 1876, for its construction, it is enacted, that such rules shall be observed, "when consistent with the context." Among those rules are these—that "the word 'land,' and the phrases 'real estate,' and 'real property,' include lands, tenements and hereditaments;" and that "the phase 'personal property' includes goods, chattels, evidences of debt, and things in action." But no definition or construction is given of the phrase "chattels real."

The Revised Statutes of Indiana, of 1843, act of February 11,

1843, part 2 chap. 29, Art. 1, § 1, provided as follows: "Section 1. When, by any law of this State, real estate is authorized or directed to be sold by virtue of any execution, the same shall be construed to mean and include, 1. All the lands, tenements, and hereditaments of the judgment debtor, whether in possession, reversion or remainder. 2. Lands, tenements, and hereditaments fraudulently conveyed with intent to defeat, delay, or defraud creditors. 3. All rights of redeeming mortgaged lands, tenements, or hereditaments, and also all lands held by virtue of any land-office certificate. 4. Lands, tenements, and hereditaments, and any estate or interest therein, holden by any one in trust for, or to the use of, another, on execution issued on any judgment against the person to whose use, or for whose benefit, the same are holden." The provisions of these four clauses were substantially retained in the Revision of 1852, and the provision as to "chattels real of the judgment debtor" was added as a 5th clause. Although, by the Revised Statutes of 1843, part 2, chap. 29, Art. 1, § 3, p. 454, judgments were made a lien on real estate and chattels real of the judgment debtor, which provision is contained in the Revision of 1852, part 2, chap. 1, Art. 24, § 527, of vol. 2 of Davis' edition of 1876, chattels real were not specifically made liable to sale on execution as real estate, till 1852, when the 5th clause was added.

That clause must be interpreted according to the accepted meaning of the words, "chattels real." Blackstone defines chattels real, according to Sir Edward Coke, 1 Inst. 118, to be such as concern, or savor of, the realty, as terms for years of land, and says they are called real chattels, as being interests issuing out of, or annexed to, real estates, of which they have one quality, viz., immobility, which denominates them *real*, but want the other, viz., a sufficient legal indeterminate duration, which want it is that constitutes them *chattels*. 2 Bl. Comm. 386. Chancellor Kent says, 2 Kent, 342: "Chattels real are interests annexed to or concerning the realty, as a lease for years of land; and the duration of the term of the lease is immaterial, provided it be fixed and determinate, and there be a reversion or remainder in fee in some other person."

The interest of the judgment debtors in this case in the land covered by the Bunting agreement was a chattel real; and as the dispute here relates to machinery, buildings, fixtures and improvements situated on the Bunting premises, and held under the Bunting agreement, it follows that that property had impressed on it, by the statute, for the purposes of a sale on execution, the character of a chattel real, and became, for those purposes, real estate, and, therefore, was not required to be sold as personal property, present and subject to the view of those attending the sale, but was properly sold as real estate, at the door of the county court house.

The estate for years, or the interest in the land, could not be subject to view. The machinery, buildings, fixtures and improvements were created under the privilege given by the agreement to occupy the land with constructions and buildings for mining coal and other minerals, and, although Helphenstine & Co. had the right to remove the buildings and fixtures at the expiration of the agreement, yet, so long as they were held under the agreement, on the premises, and were of the character referred to, they followed the term for years and partook of its character.

In *Barr* v. *Doe*, 6 Blackford, 335, in 1843, it was held that a parol lease for three years was a chattel interest, and could be sold as a chattel, on an execution issued by a justice of the peace. But that decision does not apply to the statute now under consideration, and no case is cited or found in the courts of Indiana, which holds to the contrary of the views above expressed. Indeed, in the Revised Statutes of 1843, part 3, ch. 47, § 347, p. 992, form No. 10, the form prescribed for an execution by a justice of the peace was against "goods and chattels," while in the Revision of 1852, vol. 2 of Davis' edition of 1876, part 5, ch. 127, form No. 4, the form runs against "goods" only.

The case of *Buhl* v. *Kenyon*, 11 Mich. 249, is cited for the appellants. It was there held, that an estate for years in land was to be sold, on execution, as personal estate, and that a sale of it in accordance with the statutory provisions for the sale of real estate was void. The court proceeded on the ground that, as the statute of Michigan provided that the words "real

estate, . . . when not inconsistent with the manifest intention of the legislature, . . . shall be construed to include lands, tenements, and real estate, and all rights thereto, and interests therein;" and also provided that "all the real estate of a debtor, whether in possession, reversion or remainder, including lands fraudulently conveyed, with intent to defeat, delay or defraud his creditors, and the equities and rights of redemption hereinafter mentioned, shall be subject to the payment of his debts, and may be sold on execution as hereinafter provided;" and also enacted, that "all chattels, real or personal, and all other goods liable to execution by the common law, may be taken and sold thereon, except as is otherwise provided by law;" and, as a leasehold interest of the kind in question was a chattel interest, and was by the last named provision classed among personal property, it was not within the law applicable to the sale of lands on execution. In the present case, a chattel real is distinctly classed, by § 526, among "real estate liable to be sold on execution," and must, therefore, be sold in the manner in which § 466 directs that "real estate taken by virtue of any execution shall be sold."

The point decided in *Meni* v. *Rathbone*, 21 Ind. 454, 467, was, that a lease for years, acquired by a wife during coverture, became the property of her husband, when reduced to possession by him, and, being a chattel, was personal property, under the definition before referred to, and subject to the husband's debts, and, being a chattel real, a judgment against the husband was, by the statute of 1852, a lien upon it.

The motion made in the Circuit Court to modify the decree was based on the idea, that, while the term for years might be a chattel real, the machinery, buildings, fixtures and improvements placed on the land should have been sold as personal property. As the statute requires that real estate "shall" be sold at the door of the court house, the visible property could not be sold there in view of the persons attending the sale of the real estate, unless it was first severed from the land; and to have so treated it would, doubtless, have rendered not only it but the term of years worthless, as vendible articles. No such result could have been contemplated by the law-makers,

and none such can be allowed, if another reasonable and consistent construction is to be found.

It is not necessary or proper to consider any question involved in any right of redemption. Nor is it intended to decide anything as to the status of any of the property, aside from the lawfulness of the manner of its sale, under the statute in regard to such sale.

The decree of the Circuit Court is

*Affirmed.*