LINCOLN NATIONAL BANK AND TRUST COMPANY

v. NATHAN ET AL.

[No. 27,195. Filed February 20, 1939.]

*Morris, Newkirk & Hasley,* and *Willard Shambaugh,* for appellant.

*Dan C. Flanagan,* and *James P. Murphy,* for appellees.

SWAIM, J.—This was an action brought by the appellant against the appellees to foreclose three mortgages on three certain grain elevator properties owned under the trade name of Nathan Grain Company, by the appellee, Chester J. Nathan, a resident of Allen County, Indiana, which said mortgages are hereinafter referred to as mortgages "A," "B," and "C."

The elevator covered by mortgage "A" was located on land which belonged to said mortgagor in Allen County, Indiana. Said mortgage was an ordinary real estate mortgage and was duly recorded in said Allen County.

The property covered by mortgage "B" was located

in DeKalb County, Indiana, on the land of the Baltimore and Ohio Railway Company and was described in the mortgage as follows:

"The grain elevator and scales and coal sheds situated upon the real estate of the Baltimore and Ohio Railroad Company in the Town of St. Joe, DeKalb County, Indiana, together with all machinery and appliances thereto belonging or in any way pertaining, contained in or connected with said elevator and together with all the rights, licenses and permits in and to the said real estate of said Railroad Company whereon said elevator and appurtenances are located, being the same identical personal property and rights conveyed by Hiram Reasoner to Julius Nathan by bill of sale dated April 23, 1913, and recorded at Record H, page 103 in the Office of the Recorder of DeKalb County, Indiana, on April 23, 1913."

Mortgage "C" covered property located on the land of the Wabash Railroad Company in the Town of Topeka, LaGrange County, Indiana, which property was described as follows:

"The grain elevator situated upon the real estate of the Wabash Railroad Company in the town of Topeka, LaGrange County, State of Indiana, together with all machinery and appliances thereto belonging or in any way appertaining, contained in or connected with said elevator, and together with all the rights, licenses and permits of the mortgagor, Chester J. Nathan, in the real estate, of said Railroad Company on which said elevator is located, the property mortgaged hereunder being the same identical property that was sold and transferred by Harvey H. Troxel to Julius Nathan by bill of sale dated March 4, 1912, and recorded in Record 2, page 4, of the Recorder's Office of LaGrange County, Indiana, recorded April 2, 1912."

Mortgages "B" and "C" were both written on chattel mortgage forms, were executed by Nathan and his wife, Leonore H. Nathan, June 18, 1931, described the property covered as "personal property," and were

recorded only in the counties where the respective properties were located.

The elevator and other improvements covered by mortgage "B" were erected on land owned by The Baltimore and Ohio Railroad Company pursuant to the provisions of a certain written agreement executed August 7, 1916, which provided for the payment to the Company of an annual rental, for the cancellation of the "license" of the said Nathan on thirty days notice, for the removal of all structures on the expiration of the notice to vacate and further provided that neither the said Nathan Grain Company nor its legal representatives or assigns "shall at any time own or claim any interest in the land covered by this license, nor shall its possession for any length of time become ground for any claim to any right, except permission to occupy on the conditions aforesaid."

The elevator located in LaGrange County on land belonging to the Wabash Railway Company was erected and has since been maintained pursuant to the terms of a written lease, between Nathan and said Railway Company, which lease provided for a term of five years, an annual rental and an agreement to recognize buildings and structures placed on said leased premises by Nathan as his property with the right to remove same.

On November 25, 1931, the appellee, Nathan, by a written agreement, rented and leased to the appellee, Benjamin Levy, the three elevator properties covered by said mortgages for a period of thirteen months. This lease recited that the two elevator properties covered by mortgages "B" and "C," "are covered by a chattel mortgage or mortgages now outstanding, and it is agreed and understood that if, during said thirteen months' period, said mortgage or mortgages shall be foreclosed and the property covered thereby sold so that said Levy shall be deprived of possession thereof,

the tenancy hereby created with respect to such property shall immediately cease and determine and said Levy shall be relieved and discharged from any further liability or obligation with respect thereto, except that he shall pay such proportion of the tax assessed with respect to said property as the period elapsing from the first day of December, 1931, to the date he shall yield possession thereof to the purchaser under such foreclosure sale bears to the whole of said thirteen months' period."

On October 1, 1932, and while said lease of December 1, 1931, was still in force another written agreement was entered into whereby said Nathan leased said properties to said Levy for a period of ten years from January 1, 1933. This second lease did not mention said mortgages but the trial court in its finding No. 3 expressly found that, "At the time said leases were executed, the defendant, Benjamin Levy, knew all about mortgages "A," "B," and "C," executed by the defendants, Chester J. Nathan and Leonore H. Nathan to the plaintiff." The court further found that said Levy had made no default on said second lease and that he was still in possession of all of said elevator properties pursuant to the terms thereof.

This cause was tried on the issues formed by the amended complaint of the plaintiffs, the answers of general denial filed by the defendants Nathan and Nathan and the answer of the defendant Levy alleging that the defendants Nathan and Nathan had at all times lived in Allen County, Indiana; that the said Chester J. Nathan was the owner of all of said mortgaged property; that all of said property covered by mortgages "B" and "C" was personal property and none of said property was real estate; that neither said mortgage "B" nor "C" was recorded in Allen County; and that the lease of said Levy constituted a first lien upon

said personal property superior and prior to the lien of said mortgages.

The trial court made a special finding of facts and stated its conclusions of law thereon. The appellant duly excepted to the said conclusions of law numbered 2, 3, and 4 and the only error assigned is based thereon. The conclusions of law are as follows:

"CONCLUSION No. 1. There is due the plaintiff, Lincoln National Bank and Trust Company of Fort Wayne, from said Chester J. Nathan as of this date, on the note set out in Finding No. 1, for principal, interest and attorney fees, the sum of $12,855.16, all without relief from valuation or appraisement laws, and that plaintiff is entitled to a judgment therefor against the defendant, Chester J. Nathan.

"CONCLUSION No. 2. That the rights of the defendant Benjamin Levy under the lease set out in Finding No. 3, executed on November 25th, 1931, are first and prior to the liens of each of the mortgages lettered "B" and "C" on the elevators and fixtures located in DeKalb County and LaGrange County, respectively, and any right, title and interest or estate therein or claim thereon of the plaintiff Lincoln National Bank and Trust Company.

"CONCLUSION No. 3. That each of said mortgages lettered "A," "B," and "C" securing said note, described in Finding No. 1, is a lien on the property therein described superior to any right, title or interest or estate therein or claim thereon of the defendants Chester J. Nathan, Leonore H. Nathan and Benjamin Levy, or any of them, excepting only the rights of said Benjamin Levy as concluded in conclusion of law No. 2.

"CONCLUSION No. 4. That the plaintiff, Lincoln National Bank and Trust Company is entitled to a decree that each of said mortgages hereinabove mentioned shall be foreclosed against all the parties to this action and that all the property therein described, or so much thereof as may be necessary for the purpose, be sold, seriatim, by the respective Sheriffs of Allen County, DeKalb County and La-Grange County, as lands are sold upon execution

issued upon judgments at law without relief from valuation or appraisement laws, provided, however, that the property described in mortgages lettered "B" and "C" shall be sold subject only to the right of Benjamin Levy under the lease executed by said Benjamin Levy and Chester Nathan, which lease is as follows: (here followed copy of lease between Levy and Nathan, dated October 1, 1932.) And that the proceeds derived therefrom be applied by said Sheriff as follows:

"First: To the payment of the costs of this action, including the costs of each of said sales.

"Second: To the payment of the amount found due said Lincoln National Bank and Trust Company.

"Third: The overplus, if any, to be paid by the respective Sheriffs to the Clerk of this Court for the use of the party or parties lawfully entitled thereto; that, if said mortgaged property shall fail to sell for a sum sufficient to pay said amount so found due said Lincoln National Bank and Trust Company, principal, interest, and costs—the balance thereof remaining unpaid shall be levied on the goods and chattels, lands and tenements of the defendant, Chester J. Nathan, subject to execution, and that sale thereof shall be made without any relief whatever from valuation or appraisement laws."

Judgment was duly entered by the trial court in accordance with these conclusions of law.

This appeal is based on the alleged error of the trial court in holding the liens of the mortgages "B" and "C" inferior and subject to the rights of the appellee Levy, under his lease dated October 1, 1932.

The principal question presented is whether the property covered by said two mortgages constitutes "goods" within the meaning of §33-301 Burns 1933, §8373 Baldwin's 1934, which provides as follows:

"No assignment of goods by way of mortgage shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be ack-

nowledged as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, if he resides in this state, and if not a resident of the state, then in the county where said property is situated, within ten (10) days after the execution thereof."

If the property here in question did properly constitute "goods" the two mortgages, not having been recorded pursuant to the terms of the statute and possession of the property not having been delivered to the mortgagee, were void as against Levy who was not a party thereto. *Stengel et al.* v. *Boyce* (1895), 143 Ind. 642, 42 N. E. 905.

Most of the cases cited by appellees deal with the question of fixtures which were of such a character that they would ordinarily become real estate on being attached to the land, but which, because of the intentions or agreements of the interested parties, were held to retain their character as personal property and, therefore removable by the party owning them. These cases are not helpful in arriving at a correct construction of the statute in question.

It is admitted in this case that the elevators, machinery and appliances covered by mortgages "B" and "C" were, under the terms of the leases from the railway company, personal property which belonged to the said Nathan. It may be admitted that the leases held by the said Nathan on the real estate on which said improvements were located also constituted personal property. The question still remains, did such personal property constitute "goods" within the meaning of said statute?

Section 56-119 Burns 1933, §14671 Baldwin's 1934, provides as follows:

"Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three (3) years, shall be recorded in the recorder's

office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded."

It will be noted that this statute provides for the recording of every mortgage of lands *or of any interest in lands* in the county where such lands are located. The word "lands" used in designating a classification of property is ordinarily used as being synonymous with "real estate" or real property" and as including lands, tenements and hereditaments, or, all property properly classified as real property. Section 2-4701 Burns 1933, §1217 Baldwin's 1934; *Davidson* v. *Nicholson* (1877), 59 Ind. 411.

The phrase "or any interest therein" following the word "lands" in the above statute must be construed to include a classification of property other than real property or such phrase would be superfluous. A word or a clause in a statute is to be treated as surplusage only when no other possible course is open.

If certain property constitutes an interest in real estate, even though such property might be classed as personal, it is properly mortgaged by a real estate mortgage which under the above statute is recorded in the county where the property is located. A mortgage on such property can not be held invalid as against third persons with notice on the ground that it has not been recorded pursuant to the provisions of the chattel mortgage statute. The above real estate statute only provides that such a mortgage shall be "void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable

consideration, having his deed, mortgage or lease first recorded."

The provision in the contract between Nathan and the Baltimore and Ohio Railway Company that "Neither the second party, nor its legal representatives ■ shall at any time own or claim any interest in the land covered by this license" can only be construed to mean any interest greater than expressly given by the contract.

The leaseholds owned by said Nathan on the lands of the two railroad companies were chattels real and constituted an interest in real estate. While a chattel ■ real for most purposes is considered as being personal property, it is also recognized as constituting an interest in real estate. In *Comer* v. *Light* (1910), 175 Ind. 367, 375, 94 N. E. 325, this court said: "A chattel real at common law was an interest annexed to, or growing out of real estate, as a term of years, having the character of immobility, which denominated them real, while other chattels proper are movable, but they were regarded as personal property, and went to the personal representative upon death, and not to the heir. Schouler, Personal Property (3d. ed.) Sec. 20." In Bouvier's Law Dictionary we find this definition: "Real chattels are interests which are annexed to or concern real estate: as, a lease for years of land. And the duration of the lease is immaterial whether it be for one or a thousand years, provided there be a certainty about it and a reversion or a remainder in some other person." The following statutes of this state also treat chattels real as being an interest in real estate:

(a) "The following *real estate* shall be liable to all judgments and attachments, and to be sold on execution against the debtor owning the same, or for whose use the same is holden, viz.:

'Fifth. All *chattels real* of the judgment debtor.' Section 2-3613 Burns 1933. (Our italics.)

(b) "Real estate, *including chattels real*, taken by virtue of an execution, shall be sold at public auction at the door of the court house of the county in which the same is situated, . . ." Section 2-3904 Burns 1933. (Our italics.)

(c) "All final judgments for the recovery of money or costs in the Circuit Court and other courts of record of general original jurisdiction sitting in the State of Indiana, whether state or federal, shall be a lien upon *real estate and chattels real* liable to execution in the county where, and only where, such judgment has been duly entered and indexed in the judgment docket as provided by law, . . ." Section 2-2706 Burns 1933. (Our italics.)

(d) "A freehold estate, *as well as a chattel real*, may be created to commence at a future day; and an estate for life may be created in a term of years, with or without the intervention of a precedent estate, and the remainder limited thereon; the remainder of a freehold or chattel real, either contingent or vested, may be created, expectant on the determination of a term of years." (Our italics.) Section 37, of an Act entitled: "An Act concerning real property and the alienation thereof." Revised Statutes 1852, Vol. 1, page 232, on page 238, §56-139 Burns 1933.

The only conceivable purpose of a statute requiring the recording of a mortgage is to give persons subsequently dealing with the mortgaged property notice of the existence of the lien of the mortgage. To accomplish this purpose it is necessary, as provided by statute, to record the mortgage of a chattel real or of any interest in real estate in the records of the county where the property is located, otherwise, under the common and well known practice of abstractors and attorneys in searching the records such notice would not avail.

In view of the above it seems clear that the property of the said Nathan described in each of the mortgages

"B" and "C" as, "all the rights, licenses and permits of the mortgagor, Chester J. Nathan, in the real estate of said Railroad Company on which said elevator is located" constituted an interest in lands within the meaning of §56-119 Burns 1933, §14671 Baldwin's 1934, and that, therefore, said mortgages as to this property were properly recorded in the counties where said real estate was located.

The last paragraph of the trial court's Finding No. 2 was as follows: "Each of said elevators is a frame structure attached to the real estate on which it is located and neither of said elevators was designed to be moved from place to place. The machinery and equipment used in said elevators are securely attached to the buildings in which they are located. Under the contracts by which Nathan was given the right to erect said elevators at the town of St. Joe and at the Town of Topeka on lands of said railroad companies, he has the right, as in said contract provided, to remove said elevators from the property on which they are located." Mortgages "B" and "C" covered both the leasehold interest belonging to the mortgagor and the buildings and equipment located thereon. Mortgage "A" covered the real estate in Allen County which belonged to the mortgagor and the "grain elevator, sheds and appliances thereto belonging or in anywise pertaining contained in or connected therewith." The appellees have raised no question as to the property covered by mortgage "A" being properly mortgaged with and as a part of the real estate. The elevators, machinery and appliances were of the type of property which when affixed to the real estate became prima facie a part of the real estate. It may also be said that property of this type, when affixed to real estate pursuant to the terms of a lease by the tenant, for use in connection with his leasehold, becomes, at least prima facie, impressed with

the character of the leasehold and is properly mortgaged with and as a part of the chattel real. In the case of *Hyatt* v. *Vincennes Nat'l Bank* (1885), 113 U. S. 408, 409, 5 S. Ct. 573, 28 L. Ed. 1009, it was held that the following described property, to wit: " 'One engine and boiler and hoisting machine, steam pump, Fairbanks' railroad scales, wagon scales, four screens, blacksmith's shop, one office building, one engine building and dump house, one stable, one lime house, two dwelling houses, track in coal mine, railroad track, switches and all fixtures belonging to the coal mine on said real estate and leasehold' " and "the interest of the judgment debtors for the residue of terms of years unexpired under certain mining leases of real estate" was all subject to be sold on execution as real estate under the fifth clause of our Indiana statute, as "chattels real of the judgment debtor," and this regardless of the fact that under the terms of the lease, the lessees were given "the right to remove all buildings or fixtures placed on said land when said agreement has been forfeited or may have expired." In so holding the Supreme Court of the United States, 113 U. S. 408, *supra,* said (p. 416) :

> "The interest of the judgment debtors in this case in the land covered by the Bunting agreement was a chattel real; and, as the dispute here relates to machinery, buildings, fixtures and improvements situated on the Bunting premises, and held under the Bunting agreement, it follows that that property had impressed on it, by the statute, for the purposes of a sale on execution, the character of a chattel real and became for those purposes real estate and, therefore, was not required to be sold as personal property, present and subject to the view of those attending the sale, but was properly sold as real estate, at the door of the county court house.
>
> "The estate for years or the interest in the land, could not be subject to view. The machinery, buildings, fixtures and improvements were created under the privilege given by the agreement, to occupy the

land with constructions and buildings for mining coal and other minerals, and, although Helphenstine & Co. had the right to remove the buildings and fixtures at the expiration of the agreement, yet, so long as they were held under the agreement, on the premises, and were of the character referred to, they followed the term for years and partook of its character."

The rule is stated in 22 Ruling Case Law, §40, p. 65 as follows: "Chattels real are interests in real estate less than freehold, such as estates for years, at will and by sufferance. They are to be distinguished, on the one hand, from things which have no concern with the land, such as mere movables and rights connected with them, which are chattels personal, and, on the other hand, from a freehold, which is realty. Where a person erects buildings on leased premises under an agreement in the lease that he may remove them, or places machinery in buildings under a similar agreement, the buildings and the machinery follow the term and partake of its character as a chattel real."

In the case of *Knapp* v. *Jones* (1892), 143 Ill. 275, 28 N. E. 80, 32 N. E. 382, an elevator had been built on ground leased from a railroad company. The lease was for one year, provided for cancellation on notice of sixty days, and that the lessee might remove the buildings at any time before the expiration of the lease. The lessee gave a trust deed on the elevator and the leased ground on which it was erected as security for a debt. On the foreclosure of the trust deed it was contended that the property in question was personal property within the meaning of the Illinois chattel mortgage statute, and that since this statute had not been followed the lien of the trust deed had expired. The Supreme Court of Illinois held, however, that the elevator and the leasehold constituted a chattel real and under the Illinois statute was properly mortgaged as real estate. On application for a rehearing that court, at page 383, said:

"The argument of this case on behalf of the appellants, throughout, seems to proceed upon the supposition that the character of the property in dispute is to be determined as though the case was between the Illinois Central Railroad Company and its lessee, Blanchard. Whether, under his lease, Blanchard could have insisted upon his right to treat the elevator as personalty, or whether, under other circumstances, it might not be so treated as between him and third parties, is not the question here involved. He having voluntarily conveyed it, together with his leasehold estate in the land, what did his grantee get—a mere chattel or a chattel real?"

See also the following cases: *In re Rogers and Woodard* (1904), 132 Fed. 560; *Calnon* v. *Fidelity-Phenix Fire Ins. Co.* (1925), 114 Neb. 195, 95 N. W. 361; *Lindley* v. *Ross* (1912), 200 Fed. 733; *Standard Oil Co. of Calif.* v. *Idaho Community Oil Co.* (1934), 98 Mont. 131 37 P. (2d) 660.

In the instant case the mortgages "B" and "C" contained all necessary words to comply with the form of real estate mortgages as prescribed by §56-117 Burns (§14663 Baldwin's), *supra*. The mortgages were duly signed, sealed and acknowledged by the owner of the mortgaged property and by his wife. They were then recorded in the two counties where the property covered was located. The property covered was described therein as personal property which, for purposes of inheritance and as between Nathan and the railroad companies, was probably correct. The fact that chattel mortgage forms were used does not change the character of the mortgaged property nor estop the appellant from contending that the mortgages were properly recorded in the counties where the property was located. As against Levy who had full and complete knowledge, of the character of the property and of the mortgages, there could be no such estoppel.

Appellees in their brief have quoted at length from the opinion in the case of *St. Joseph Hydraulic Co.* v. *Wilson* (1892), 133 Ind. 465, 33 N. E. 113, which case involves a purported mortgage lien given by the owner of a paper mill which was located on the land of the mortgagor. In such a case the mortgage itself would amount to a constructive separation of the mill from the real estate and this court held that the mill, so separated, constituted "goods" within the meaning of the chattel mortgage statute. Again in the case of *Binkley* v. *Forkner* (1888), 117 Ind. 176, 19 N. E. 753, the owner of the real estate executed and delivered a chattel mortgage on certain machinery before the machinery was attached to the land, thereby clearly showing an intention that the machinery, when attached, should not become a part of the real estate. The case of *Horn* v. *The Indianapolis Natl. Bank* (1899), 125 Ind. 381, 25 N. E. 558, involved improvements which were mortgaged separately from any interest in the land on which they were situated, the mortgage expressly providing that the mortgagor should have the right to move said mortgaged property from the land where it was then located to other land of the mortgagor. The cases of *Price* v. *Malott* (1882), 85 Ind. 269, and *Malott* v. *Price* (1886), 109 Ind. 22, 9 N. E. 718, involved improvements on the land of another but the mortgage given by the tenants did not purport to cover the interest of the tenants in the land on which the improvements were located.

Where a mortgagee takes a mortgage which covers both the leasehold and the improvements thereon he takes an interest in real estate and should record such mortgage pursuant to the provisions of §56-119 Burns 1933, §14671 Baldwin's 1934, in the county where such property is located.

The judgment herein is reversed and the trial court

is instructed to restate its conclusions of law and enter judgment thereon in conformity with this opinion. The death of the appellee, Chester J. Nathan, since the submission of this cause having been suggested, this judgment is rendered as of the date of submission.

Roll, J., absent.