STOREN ET AL. *v.* JASPER COUNTY FARM BUREAU CO-OPERATIVE ASSOCIATION, INC.

[No. 15,538. Filed June 5, 1936. Rehearing denied October 14, 1936. Transfer denied December 17, 1936.]

78

*Philip Lutz, Jr.*, Attorney-General, *Joseph W. Hutch-inson*, Assistant Attorney-General, and *Joseph P. McNamara*, Deputy Attorney-General, for appellants.

*Harvey B. Hartsock* and *Charles M. Wells*, for appellees.

KIME, C. J.—This was an action under the Uniform Declaratory Judgment Act wherein the appellee sought a judgment declaring it to be exempt from the payment of tax as required by the Gross Income Tax Act of 1933. The complaint was in one paragraph, which was answered by general denial. The trial court entered a judgment declaring the appellee to be exempt from the payment of gross income tax. Following the overruling of the motion for new trial the Board of the Department of Treasury brought this appeal assigning as error that the judgment was not sustained by sufficient evidence and that it was contrary to law.

The appellee contends that the exemption clause of the above act provided an exemption to them in that they were an agricultural organization not operated for profit and, claiming further, that the statute under which they were organized, being the co-operative marketing act of 1925, provided that associations organized under the act should "be deemed 'non profit' inasmuch as they are not organized to make profit for themselves as such or for their members as such, but only for their members as producers." The appellee was, as their manager testified, a purchasing organization and that

it was devoted practically wholly, as the corporate purposes indicated by the statute provided, to supplying "to its members machinery, equipment or supplies" and that it did not engage in the co-operative marketing of products of its members.

The appellee was organized and issued preferred stock in the amount of $3,550.00 which at the time of the trial had been reduced to $1,550.00 which was outstanding and upon which dividends of six per cent per annum were paid. From their incorporation to date they engaged in selling gasoline, kerosene, oil and other lubricating materials, seeds, feed, fertilizer, bindertwine, salt and other miscellaneous supplies to anyone who desired to purchase from them. Their business was conducted in a small county seat town and most of it was with farmers.

At the close of their fiscal year the status of the business was determined by taking the difference between the cost to the appellee and the sale price to the purchasers. This left a balance which the appellee says is a saving. This was passed on to the patrons in the form of common stock certificates. The individual purchaser was issued, upon each $5.00 profit that his purchases warranted, one share of common stock. This stock was issued not only to appellee's stockholders but to any person who patronized the appellee.

Of course at the outset it is hardly necessary to say that all exemption statutes, where there is any ambiguity, must be strictly construed against one seeking an exemption. The Gross Income Tax Act provides "there are however exempted from the provisions of this act (b)" members of *"agricultural* and horticultural societies . ... *not operated for profit* ... Provided, however, that this exemption shall apply only to companies, organizations, corporations and/or societies named in this subsection which are not

organized for profit, and *no part of the income of which inures to the benefit of any stockholder or other private individual."* (Our italics.) Since the parties hereto are unable to agree on the meaning of the language of this section it is a fair assumption that it is ambiguous. Here the appellee purchased supplies which they believed would be readily salable in their community without orders for the purchase of any of them from any prospective patron. They were sold to the public generally at a price comparable with the prevailing market price in that community. The difference between cost and selling price was distributed to the patrons in the form of common stock in the appellee. The primary question to be determined here is whether or not this difference is income which inures to the benefit of any stockholder or other private individual. The appellee contends that even though there is some income which inured to the benefit of private individuals who were not members of the appellee association that this was purely incidental to the main purpose of the act under which it is incorporated and should not defeat the express purpose that it should be "deemed a non-profit organization," but they as readily agree that it is not what an organization is deemed to be but what it actually is that controls.

Of course it might be altogether possible to organize under the agricultural marketing act so as to come within the exemption but the question here is whether or not the organization as operated comes within the exemption, and since this must receive a strict construction the fact alone that a part of the income inures to the benefit of private individuals not members of the association is sufficient in and of itself to prevent the exemption from extending to the appellee.

Whether or not this was *"income* which inures to the

benefit" is decisive of the appeal here presented. Generally speaking, income is defined and considered by the public generally to be all that which comes in and in the absence of a contrary intention we must assume that the legislature in adopting this act used the word in its ordinary meaning. Income is a generic term and is all inclusive, being broad and comprehensive. However, since its specific meaning must be determined from its use, the act itself indicates that it was intended to be used here, as elsewhere throughout the act, as all inclusive. The act is known as the *Gross Income* Tax Act, *gross* having been defined to mean all. The act provides that there shall be imposed a tax "measured by the amount or volume of gross income" and the term gross income is *specifically defined* in the act to mean "the gross receipts of the taxpayer received as compensation" and that "derived from trades, *businesses or commerce* and the gross receipts proceeding or accruing . . . and all receipts" and further with the evident expressed intention of the idea that the word gross should include everything added, in another section (in the classification of rates) that the tax shall be imposed upon the *"entire* gross income." Thus it is evident that the result intended to be accomplished by this act was the taxation of "the entire gross income" of those not specifically exempted. As further evidence of the intention of the legislature that the exemptions were to be strictly limited, it provided that the exemptions should only apply to specifically enumerated organizations not operated for profit and no part of the income of which inured to the benefit of any stockholder or other private individual.

The profit or any gain made as a result of the carrying on of a business of buying and selling has in recent years, under both federal and state net income tax acts been held to be income. The gain made here was made

in the conduct of a purely commercial business which consisted of making purchases and sales. The difference in the cost to the appellee and its sale price to the purchaser was a profit, gain or income and this inured to the benefit of the patrons of appellee in the form of $5.00 common stock certificates when the amount of business done by appellee and patron warranted such margin of profit. The undisputed evidence was that this stock certificate had some value, consequently it was a gain or profit or income inuring to the benefit of the stockholder and other private individuals as well. The appellee contends that this was a saving to the stockholders of the appellee and should not be classed as income. But this enhanced their total wealth and whether it be called savings, gain, income or by any other name it still renders the appellee liable to the tax intended by the legislature.

The burden of establishing that they were entitled to an exemption was upon the appellee and any doubt must be resolved in favor of the tax rather than the exemption. In the absence of a clear showing that they were entitled to the exemption it must be denied.

The judgment of the Marion Superior Court is reversed with instructions to vacate the judgment entered and render a judgment declaring the appellee to be subject to the payment of the gross income tax.

Wiecking, J., not participating.