INDIANA DEPARTMENT OF STATE REVENUE,
GROSS INCOME TAX DIVISION *v.* E. W. BOHREN, INC.

[No. 30,049. Filed December 6, 1961.]

---

274

*Edwin K. Steers,* Attorney General, and *Charles D. Rodgers,* Deputy Attorney General, for appellant.

*Hoffman, Moppert & Solomon* and *James R. Solomon,* of Ft. Wayne, for appellee.

ARTERBURN, J.—This is an appeal by the Indiana Department of State Revenue, Gross Income Tax Division, from a judgment entered in favor of the plaintiff below (appellee here) E. W. Bohren, Inc., in which it sought in an action to recover the payment of certain gross income taxes alleged by it to have been wrongfully and erroneously collected for the tax years of 1954 and 1955.

The receipts would normally be taxable were it not for the contention that they are derived from transactions involved in interstate commerce.

The Indiana Gross Income Tax Act, Acts 1933, ch. 50, §6, p. 388; 1937, ch. 117, §6, p. 604; 1943, ch. 144, §2, p. 425; 1945, ch. 143, §2, p. 311; 1953, ch. 37, §1, p. 134; 1955, ch. 47, §1, p. 99; 1955, ch. 291, §1, p.

833; 1959, ch. 375, §1, p. 1009, being §64-2606(a) of Burns' 1951 Repl. reads as follows:

> "(a) So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, but only to the extent to which the State of Indiana is prohibited from taxing such gross income by the Constitution of the United States of America."

The question here is whether or not the receipts of appellee, with which we are concerned, fall within the above exemption.

The evidence is to a large extent undisputed. The appellee is a corporation engaged in business in Woodburn, Indiana. It owns a considerable number of trucks. The primary business of the appellee consists of buying grain, feed and agricultural products in Indiana and delivering these by truck to feed manufacturers and retailers to whom sales are made in Ohio and western Pennsylvania. It is not the tax on the receipts from this business that is in issue.

It is unnecessary for appellee to possess or have interstate commerce licenses or permits for the transportation of the agricultural products. Following the sale and delivery of its agricultural products in the eastern states, the appellee corporation made arrangements with various trucking companies engaged as common carriers in interstate commerce to use its trucks on the return trip (which trucks would otherwise be empty) to carry and transport steel and other products for such interstate shippers on the return trip to Indiana and that area.

The appellee possessed no interstate commerce permit to carry the products on the return trip. How-

ever, the interstate carrier permits of parties with whom the appellee contracted were utilized for that purpose.

The appellee corporation entered into agreements described variously as "Single Trip Contract", "Equipment Trip Lease", "Agreement and Lease" and "Hired Truck Agreement" with the eastern interstate carriers, among whom were Aetna Freight Lines, Inc., Hayes Freight Lines, Inc., Sentle Trucking Corporation and Shirks Motor Express Corporation. The eastern carriers solicited the transportation business, particularly that of the steel mills in the Pittsburgh area, and after the business was obtained the eastern carriers would contact appellee's office in Woodburn, Indiana, by telephone to determine whether one of appellee's vehicles would be available on a return trip to pick up and deliver the goods in Ohio, Indiana or Illinois. The appellee's office would acknowledge the availability of the equipment and driver. The contract orally made would be subsequently reduced to a written contract by appellee's agent-driver signing the contract or agreement at the office of the eastern carrier. The compensation of appellee corporation was based upon the revenue charged by the eastern carrier for the services of the truck and driver. The contracting agreements varied slightly between the eastern carriers and the appellee. For instance, in the contract with Sentle Trucking Corporation, the lessee reserved the right of control of the vehicle to the extent that it might designate the freight to be hauled, specify the routes for the leased equipment or those over which lessee is permitted to operate by virtue of its interstate commerce permit and to indicate the destination of the freight hauled. All of the contracts provided that the appellee had the duty to

comply with all laws and regulations which the eastern carrier would be required to follow and obey under the eastern carrier's interstate commerce permit.

The agreement with the Hayes Freight Lines, Inc. provided: "The Lessor shall lease the above described vehicles to Lessee for transporting such property as Lessee may require . . ." The agreement is designated an "Equipment Trip Lease". In the case of Shirks Motor Express Corporation the agreement provided: "The Owner hereby hires and delivers to Carrier the following described motor vehicle(s) to be used by Carrier . . ." It further provided that the owner-lessee shall operate only on the routes and within the territory authorized to be served by the eastern carrier by the Interstate Commerce Commission.

The appellee is not a common carrier in interstate commerce within the meaning of that term insofar as a permit from the Interstate Commerce Commission is necessary in the activities with which we are here concerned. Regulation 4301 of the Gross Income Tax Division relating to transportation charges of carriers, makes a clear distinction between those engaged regularly in the transportation of interstate commerce under a federal permit and those incidentally involved therein.

It appears to us that appellee's income is not derived from operating a truck line or carrier in interstate commerce, but rather the receipts are received as a result of the use of appellee's property and equipment under a contract or lease to an interstate carrier. The contract is made in Indiana and the receipts are received in Indiana—in reality for the use or rental of property and equipment of the lessee. There is no

showing made that the gross income tax on the appellee is a burden on interstate commerce. The bills of lading designated the eastern carrier as the interstate carrier. The eastern carrier was the entity authorized by the Interstate Commerce Commission to perform the carriage of the goods. The appellee made no contract to carry the goods for either the consignee or consignor. There is no showing that the tax imposed by the State of Indiana is borne by the eastern interstate carrier.

Regulation 4100 of the Gross Income Tax Division also provides:

> *"Taxable and Nontaxable Income Received From Sources in Other States.* All persons as defined in the Indiana Gross Income Tax Act who are resident and/or domiciled in Indiana will be required to report for taxation their gross income received from all sources, including that derived from out-of-state sources and activities except (1) where such gross income is derived from a business regularly carried on, the situs of which is outside the state, and (2) income from real property situated outside the state."

Regulation 4301, Ruling No. 10 of the Gross Income Tax Division also provides:

> *"10. Rental of Equipment to Interstate Carriers.* No exemption from tax shall apply to gross income received as rental by lessors, from leasing equipment to interstate carriers even though the lessor himself operates such equipment or hires others to do so."

Burns' §64-2602 in part provides:

> " . . . Such tax shall be levied upon the receipt of the entire gross income of all persons resident and/or domiciled in the state of Indiana, except as herein otherwise provided . . ."

The burden is on the appellee to show that it falls within any of the exceptions from taxation under the act. *Arthur Walter Seed Co. etc.* v. *McClure, Treas., etc.* (1957), 236 Ind. 666, 141 N. E. 2d 847, certiorari denied 355 U. S. 906, 78 S. Ct. 333, 2 L. Ed. 2d 261; 27 I. L. E., Taxation, §62, p. 71; *Storen* v. *Jasper County Farm Bur. Co-op. Assn.* (1936), 103 Ind. App. 77, 2 N. E. 2d 432.

> "The power of the States to tax and the limitations upon that power imposed by the Commerce Clause have necessitated a long, continuous process of judicial adjustment. The need for such adjustment is inherent in a Federal Government like ours, where the same transaction has aspects that may concern the interests and involve the authority of both the central government and the constituent States.

> "The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts." *Freeman* v. *Hewit* (1946), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265.

The tax upon the income of the residents of this state is a method of distributing the burdens of government. These are rights and privileges which attach to the domicile within the state. The United States Supreme Court, in *Lawrence* v. *State Tax Comm.* (1932), 286 U. S. 276, 76 L. Ed. 1102, 52 S. Ct. 556, 87 A. L. R. 374 said:

> "The obligation of one domiciled within a state to pay taxes there, arises from unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise

revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits . . ."

In *Western Live Stock* v. *Bureau of Revenue* (1938), 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 994, the United States Supreme Court said:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business. 'Even interstate business must pay its way,' . . . and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business.

"As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce."

In that case the court found the business of preparing, printing and publishing a magazine was entirely local and distinct and merely incidental to the circulation of the magazine in interstate commerce. Not all taxation of interstate commerce is forbidden by the United States Constitution. The fact that a taxable activity touches on or involves interstate commerce, does not always exempt the taxpayer. It must be shown that the taxation is an actual *burden* upon interstate commerce. The appellee has the duty and obligation of making such a showing in this case in order to avoid the Indiana tax.

"The only basis for limiting a sovereign State's taxing power under the issues raised here, is that

it would interfere with the regulatory powers of Congress over commerce among the States. If there is no interference, and commerce is unimpeded, there is no warrant or authority for holding that the Commerce Clause in the Constitution of the United States makes a State's taxing laws invalid. To hold otherwise, is to create a fictitious assumption, rather than accept the realities and practicalities of the situation.

. . . . .

". . . To rule otherwise, expands the Commerce Clause by implied and fictitious assumptions to a point where it conflicts with another constitutional provision, and unnecessarily invades the state's sovereign and reserved powers." *Ind. Dept. of St. Rev., etc.* v. *Bendix Aviat. Corp.* (1957), 237 Ind. 98, 143 N. E. 2d 91. Dismissed 355 U. S. 607, 78 S. Ct. 539, 2 L. Ed. 2d 524.

It is urged that the appellee here is an independent contractor. However, in *Bates Motor Transport Lines, Inc.* v. *Mayer, Admx.* (1938), 213 Ind. 664, 14 N. E. 2d 91, in a situation similar to this, where the interstate carrier was sued for damages based on alleged negligent operation of the motor truck, this court held that the party furnishing the truck and equipment under the agreement was not an independent contractor and that the interstate carrier was the one subject to liability in tort for the negligent operation. A similar situation and holding is presented in *Gas City, etc. Co., Inc.* v. *Miller* (1939), 107 Ind. App. 210, 21 N. E. 2d 428. The trial court's finding that the appellee was an independent contractor engaged in interstate commerce was therefore erroneous in view of the law in this state.

The evidence also showed that one of the interstate carriers, Tarbet Trucking Company, Inc., is located

at Muncie, Indiana and in the same state as appellee. We additionally point out that there is no showing that the receipts from Tarbet Trucking Corporation have been segregated from any of the other receipts, which the appellee now claims was a burden on interstate commerce. A failure to make such segregation makes all the receipts liable under the Indiana Gross Income Tax Act. Burns' §64-2604, 1961 Repl.; *Western Adj. & Insp. Co.* v. *Gross Inc. Tax Div.* (1957), 236 Ind. 639, 142 N. E. 2d 630; *Samper* v. *Indiana Dept. of State Revenue* (1952), 231 Ind. 26, 106 N. E. 2d 797.

The judgment of the trial court is reversed, with directions to restate its findings and conclusions of law in conformity with this opinion and enter judgment accordingly.

Achor, C. J., Bobbitt and Landis, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 178 N. E. 2d 438.