INDIANA DEPARTMENT OF STATE REVENUE, SALES TAX DIVISION *v.* RCA CORPORATION.

[No. 2-1272A125. Filed April 25, 1974. Rehearing denied June 5, 1974. Transfer denied October 13, 1976.]

Theodore L. Sendak, Attorney General, Darrel K. Diamond, Deputy Attorney General, for appellant.

Alan H. Lobley, Leonard J. Betley, W. Stephen Perry, Ice Miller Donadio & Ryan, of Indianapolis, for appellee.

WHITE, J.—The only issue in this case is whether the trial court erred in finding that certain air conditioning equipment purchased by RCA "is . . . directly used in the direct production . . . [of] color television picture tubes" and in concluding as a matter of law that such equipment "is exempt from sales and use tax". The resolution of that issue is to be found in the meaning of the language of the statute which exempts "equipment" from those taxes when it is "directly used" in the "direct production" of tangible personal property.[1] We hold that the language is ambiguous and, since it provides a tax exemption, it must be strictly construed against the taxpayer.[2] So construed, it provides no exemption for the equipment in question. We therefore reverse.

1. IC 1971, 6-2-1-39 (Burns Code Ed.) :
   "6-2-1-39 [64-2654]. Exemptions.—(a) . . . .
   "(b)   Nor shall the state gross retail tax apply to any of the following transactions:
   * * *
   "(6)   Sales of manufacturing machinery, tools and equipment to be directly used by the purchaser in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining or finishing of tangible personal property; . . . ."
   * * *
   [Acts 1933, Ch. 50, § 39, as added by Acts 1963 (Spec. Sess.), Ch. 30, § 4, p. 60; 1965, Ch. 232, § 7, p. 556; 1967, Ch. 222, § 4, p. 526; 1969, Ch. 325, § 4, p. 1356.]

2. Storen v. Jasper County Farm Bureau Co-Operative Association, Inc. (1936), 103 Ind. App. 77, 79, 2 N.E.2d 432, 433; Indiana State Board of Tax Commissioners v. International Business College (1969), 145 Ind. App. 353, 360, 251 N.E.2d 39, 43, 18 Ind. Dec. 525, 530; Indiana Department of State Revenue v. The Boswell Oil Co. (1971), 148 Ind. App. 569, 573, 268 N.E.2d 303, 305, 25 Ind. Dec. 275, 277; State Board of Tax Comm. v. Professional Photographers of America, Inc. (1971), 148 Ind. App. 601, 608, 268 N.E.2d 617, 621, 25 Ind. Dec. 309, 315; Indiana Department of State Revenue v. Stark-Wetzel & Co. (1971), 150 Ind. App. 344, 276 N.E.2d 904, 911, 28 Ind. Dec. 323, 332; United Brethren Publish-

The judgment we reverse was rendered in a suit RCA brought against the State for a refund of sales and use taxes it had paid on the purchase of environmental control (air conditioning) equipment installed and used in RCA's Marion, Indiana, plant where it manufactures color television picture tubes. The judgment granted the refund.

The basic facts are not in dispute and are stated by the court in its finding No. 5, as follows:

"5. The $18,556.00 in dispute herein was for that portion of the aforesaid sales and use tax paid by plaintiff on the environmental control equipment which the plaintiff uses to control the temperature, humidity and presence of foreign particles in the air, in around and on the surface of color television picture tubes during the manufacturing process. This control of the environment in these manufacturing areas is to maintain proper conditions for the performance of certain manufacturing operations, the functioning of certain equipment and to prevent the contamination of delicate and sensitive electronic parts during the manufacturing of color television picture tubes. Without these temperture [sic], humidity and particle controls in the color television picture tube manufacturing areas involved, the plaintiff could not manufacture quality color television picture tubes and the quality of the tubes manufactured would be substantially lower than the quality of those which it has been manufacturing. In addition, without these environmental controls, the tubes would become so contaminated with foreign materials that the rejection rate on finished tubes would become so high that the cost of manufacture would rise to the point where it would no longer be economically feasible for the plaintiff to manufacture color television picture tubes. Therefore, without the mantenance of such environmental controls, the plaintiff could not manufacture color television picture tubes."

ing Establishment v. Shaffer, Treas. (1919), 74 Ind. App. 178, 181, 123 N.E. 697, 698; Orr v. Baker (1853), 4 Ind. 86, 88; City of Indianapolis v. McLean (1856), 8 Ind. 328, 331; City of Indianapolis v. The Grand Master (1865), 25 Ind. 518, 521; Conklin v. The Town of Cambridge City (1877), 58 Ind. 130, 133; Gross Income Tax Division v. National Bank & Trust Co. (1948), 226 Ind. 293, 298, 79 N.E.2d 651, 653; Arthur Walter Seed Co. v. McClure, Treas. (1957), 236 Ind. 666, 675, 141 N.E.2d 847, 850; Indiana Department of State Revenue v. E. W. Bohren (1961), 242 Ind. 273, 279, 178 N.E.2d 438, 440.

That finding also states conclusions which are undisputed, including the last sentence which the parties tacitly agree means that RCA could not economically produce and test color television tubes without the maintenance of the environmental controls in question—not that such manufacture would be totally impossible. Finding No. 6, however, states conclusions to which the State takes exception. It reads:

"6. The equipment used to so control the environment in the areas involved is tangible personal property directly used in the direct production process and such equipment maintains environmental conditions which are an integral part of the manufacturing process and has a positive causal effect on the color television picture tubes and the component parts during the manufacturing process."

The State concedes that the maintenance of a rigidly controlled environment is an integral and essential part of RCA's color picture tube manufacturing process, but contends that essentially is not the test for determining whether equipment is "directly" used in the "direct" manufacturing process. The State also contends that the basic facts found show that the air conditioning equipment itself has no positive causal effect on the tubes (as the court concluded in No. 6) but that its effect is negative in that it prevents the air from adversely affecting the quality of the tubes produced. Such a negative effect, it argues, cannot be considered direct.

In *State* v. *Farmers Tankage, Inc.* (1969), 144 Ind. App. 392, 246 N.E.2d 409, the trial court granted Farmers Tankage an exemption from the tax on the purchase of a truck used to collect the dead animals from which it manufactured animal and poultry feed. The statutory exemption there involved read (144 Ind. App. at 393, 246 N.E.2d at 410):

"(1) Sales to farmers and other persons occupationally engaged in the business of producing food and commodities for human, animal or poultry consumption either for sale or further use in producing such food and commodities for sale, of animal and poultry life to be used by the purchaser for such production of food and commodities, feed for such animals and poultry and seeds, plants, fertilizers, fungicides,

insecticides and other tangible personal property to be used for such production of food and commodities."

In affirming the exemption the Appellate Court said:

"The State of Indiana argues in this appeal that the Appellee is not entitled to the above exemption. The Appellant contends that the legislature in the adoption of the exemption did not intend to place such a broad construction so as to allow an exemption for transportation equipment used before the actual production processes begin.

"Appellant relies heavily on the principle stated in *Storen* v. *Jasper County Farm Bur. Co-Op. Assn.*, 103 Ind. App. 77, 2 N.E.2d 432 (1936) that 'all exemption statutes, *where there is any ambiguity,* must be strictly construed against one seeking an exemption.' (our emphasis.) Section 64-2654 of Burns' Indiana Statutes Annotated is not, however, ambiguous. The statute does not contain the word 'directly' that Appellant would have us insert to modify 'used in such production.' " (Id.)

Both the State and RCA appear to be in agreement that the *Farmers Tankage* opinion implies that had the exemption clause contained the word "directly", the purchase of the truck would not have been held to be exempt. With that we agree but find in it no help. However we also read *Farmers Tankage* as implying that had the exemption statute contained the word "directly" it would have been ambiguous, thereby requiring that it "be strictly construed against the one seeking an exemption." *Storen* v. *Jasper County Farm Bureau Co-Operative Association, Inc., supra,* cited for that principle,[3] said that "[s]ince the parties hereto are unable to agree on the meaning of the language of this section, it is a fair assumption that it is ambiguous". (103 Ind. App. at 80.) Although we doubt simple disagreement always signifies ambiguity, certainly the well reasoned opposing interpretations in the case at bar are persuasive in suggesting that "directly used by the purchaser in the direct production . . . of tangible personal property" is ambiguous.

The conflicting conclusions courts of other states have reached in interpreting similar exemptions for sales of things

---

3.  See n. 2, p. 56, for other cases which enunciate that principle.

used "directly" in manufacturing is further indication of the word's ambiguity. That fact was recognized in *Powhatan Mining Co.* v. *Peck* (1953), 160 Ohio St. 389, 116 N.E.2d 426, 428:

> "What may appear to one person to be a direct use in a particular case may appear to another equally intelligent and reasonable person not to be a direct use. This probably explains many of the differences of opinion which have been exhibited by the decisions of this court in determining whether in a particular case, a direct use was or was not involved. However, if the question as to whether a direct use is involved is allowed to depend upon the facts and circumstances of each case, without reference to decisions rendered in other cases, this court will be merely contributing to the confusion caused by the ambiguous statutory word 'directly.' Our aim should be to remove that ambiguity."

Our aim, of course, must be the same. In that attempt we also have the duty of adopting a definition which strictly construes the exemption against the taxpayer.[4]

Reference to any dictionary will reveal that there are a variety of definitions to choose from. The State has called our attention to one in *Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415:[5]

> "As an adjective, the word 'direct' means, among other things, immediate; proximate; without circuity. Black's Law Dictionary, Third Edition. It has been distinguished from collateral; consequential, incidental; and remote." 231 Ind. at 477-478.

Black's LAW DICTIONARY (4th Ed., 1951) also states:

> "Directly. In a direct way without anything intervening; not by secondary, but by direct, means. Clark v. Warner, 85 Okl. 153, 204 P. 929, 934; Olsen v. Standard Oil Co., 188 Cal. 20, 204 P. 393, 396."

---

4. See the cases cited in n. 2, p. 56.

5. The question in that case was whether the statute had imposed a tax on a particular transaction; not whether a particular transaction had been exempted from a levy. The statute therefore was to be construed against the state rather than the taxpayer. See *Indiana Department of State Revenue* v. *The Boswell Oil Company* (1971), 148 Ind. App. 569, 573, 268 N.E.2d 303, 305, 25 Ind. Dec. 275, 277.

The Supreme Court of Ohio adopted that definition in refusing to hold that purchased tools used to manufacture other tools used directly in the manufacture of a product were also used directly in that manufacture and thus exempt from use and sales taxes. *General Motors Corporation* v. *Bowers* (1959), 169 Ohio St. 361, 159 N.E.2d 739, 741, said:

> "To so hold would constitute a disregard of the plain meaning of the word 'directly' which the dictionaries define as 'without the intervention of a medium or agent'. It would seem beyond cavil that the manufactured tools are an intervention between the purchased tools and the final [product]."

Whatever effect (whether positive or negative) that RCA's air conditioning or environmental control equipment may have on the tubes RCA manufactures, or on the process of their manufacture, is exerted through the medium or agency of the environment (i.e., the air). The very name of the equipment, whether "air conditioning" or "environmental control", signifies that its immediate effect is on the surroundings in which the manufacturing process takes place and only remotely, through the intervening agency of those surroundings, on the tubes or on the process by which they are manufactured.

RCA has correctly stated that there are no Indiana cases interpreting the exemption provision here in question. It cites four cases from other jurisdictions in which there is a similar sales and use tax exemption which contains the word "directly". And, just as in the above Ohio case which we have quoted, none of RCA's cases involve environmental control equipment. It contends, however, all its cases reach the conclusion that if the equipment is an integral part of the manufacturing process it is used in the direct production. We have carefully read and considered those cases[6] and remain unconvinced that it was the intent of the Indiana General

6. *Union Carbide & Carbon Corp.* v. *Bowers* (1957), 166 Ohio St. 419, 143 N.E.2d 710; *Ohio Ferro-Alloys Corp.* v. *Bowers* (1960), 171 Ohio St. 283, 170 N.E.2d 68; *Cheney* v. *Georgia-Pacific Paper Corporation* (Ark. 1963), 371 S.W.2d 843; *Commonwealth* v. *Yorktowne Paper Mills, Inc.* (1967), 426 Pa. 18, 231 A.2d 287.

Assembly to give such a broad meaning to the words *"directly used . . .* in the *direct* production."

Indiana was years behind most other states in enacting a sales tax statute. It had the benefit of other states' experience in judicial interpretation of the exemptions, including the manufacturing exemption. The Indiana Legislature wrote its exemption in words different from those used in any statute construed in the cases RCA cites, or in any cases we have read. Indiana requires that for the sale to be exempt the property purchased must not only be "used directly" in the manufacturing process (as do the statutes of other states) but that it must be *"directly* used . . . in the *direct* production, manufacture," etc.

This repetition of the requirement that the use be direct cannot be treated as surplusage unless no other course is open. *Lincoln National Bank & Trust Co.* v. *Nathan* (1939), 215 Ind. 178, 187, 19 N.E.2d 243, 247; *Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 477, 109 N.E.2d 415, 421. Since it is reasonable to assume that the legislative purpose in repeating the directness requirement was to avoid what may have been considered overly broad judicial construction of the single directness requirement in other states, we feel obliged to give it the narrow construction we have indicated.

Almost a century ago the Indiana Supreme Court in *Conklin* v. *The Town of Cambridge City* (1877), 58 Ind. 130, 133, said:

> "Exemptions from taxation are not, and ought not to be, especially favored by the courts; and where such an exemption is claimed, the party claiming the same must show a case, by sufficient evidence, which is clearly within the exact letter of the law."

The basic facts found by the trial court do not sustain its conclusion of ultimate fact that the equipment RCA uses to control the environment in which its color television picture tubes are manufactured is "directly used in the direct pro-

duction process." As a consequence, the court erred in entering judgment for the refund of the taxes paid. Therefore, the judgment is reversed and the cause is remanded to the trial court with directions to enter judgment that plaintiff take nothing and that defendant recover its costs.

Reversed and remanded.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 310 N.E.2d 96.