**STATE of Indiana, Department of Revenue of the State of Indiana, Donald Clark, as Commissioner of Revenue, Department of Revenue, State of Indiana, Appellants (Defendants Below),**

v.

**INDIANA–KENTUCKY ELECTRIC CORPORATION, Appellee (Plaintiff Below).**

**No. 1–1081A312.**

Court of Appeals of Indiana, First District.

June 14, 1982.

Opinion on Rehearing Aug. 9, 1982. See 438 N.E.2d 782.

Linley E. Pearson, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellants.

Milford M. Miller, Grant F. Shipley, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Eugene L. Cooper, Cooper, Cox, Jacobs & Reed, Madison, for appellee.

ROBERTSON, Judge.

The Indiana Department of Revenue (Department) appeals the decision which found that sales of electricity by Indiana-Kentucky Electric Company (IKEC) to other public utilities were exempt from taxation.

We affirm in part, reverse in part, and remand.

This case involves the interpretation and application of the sales and use tax. IKEC is engaged in the business of producing electricity. It sells electricity to other public utilities and to the Department of Energy. IKEC does not sell to domestic or commercial consumers.

The Department audited IKEC and determined that its sales to the federal government and other utilities were not exempt. IKEC protested this assessment, paid the assessment, and filed suit seeking a refund. IKEC filed a motion for summary judgment which was granted. The trial court found IKEC was entitled to a refund pursuant to the provisions of Ind.Code 6–2–1–39(b)(6) and (16), and that IKEC was entitled to interest and costs in its action. The trial court also disallowed the penalty imposed by the Department.

The Department alleges that the trial court erred by finding that IKEC was a public utility as described in Ind.Code 6–2–1–38(c), that IKEC was entitled to an exemption pursuant to IC 6–2–1–39(b)(16), that IKEC was entitled to an exemption pursuant to IC 6–2–1–39(b)(6) because its purchases of tangible personal property constituted powerplant and production expenses pursuant to the Uniform System of Accounts, that IKEC was entitled to 8% interest, and that the Department must pay costs.

This case hinges upon the interpretation of IC 6–2–1–38(c), IC 6–2–1–39(b)(6) and IC 6–2–1–39(b)(16). It is necessary to examine these sections. Section 38 lists transactions which are subject to state gross retail and use tax. IC 6–2–1–38(c) provides:

(c) [Public utilities furnishing energy—Transactions excepted.] Every person engaged as a public utility in furnishing or selling electrical energy, natural or artificial gas or mixtures thereof, water, or steam or steam heating service to consumers for domestic or commercial consumption shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom, except that part thereof received from sales to consumers for use in manufacturing, mining, production, refining, oil or mineral extraction and irrigation or to other public utility companies described in subsections (c), (d) and (e) of this section and except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of any such public utility service or commodity, shall constitute gross income of a retail merchant received from selling at retail: Provided, That the furnishings of any such utility service or commodity for such excepted commercial or industrial uses not separately metered for such uses shall in its entirety constitute selling at retail unless such service or commodity is predominantly used for one [1] or more of said excepted uses, in which event it shall be deemed to be wholly used for such excepted uses.

Exemptions to the imposition of this tax are contained in section 39, which states:

(b) Nor shall the state gross retail tax apply to any of the following transactions:

(6) Sales of manufacturing machinery, tools and equipment to be directly used by the purchaser in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining or finishing of tangible personal property; sales of agricultural machinery, tools and equipment to be directly used by the purchaser in the direct production, extraction, harvesting or processing of agricultural commodities; and sales of tangible personal property to be directly used by the purchaser in the direct production or manufacture of any such manufacturing or agricultural machinery, tools and equipment.

(16) Sales to those utilities described in subsection (c) of section 38 [6–2–1–38] of this chapter which furnish or sell electrical energy or steam or steam heating service of tangible personal property to be directly used by such utilities in the direct production of electrical energy or steam or steam heating service. The term "direct use in direct production" as used in this clause shall mean and apply to tangible personal property constituting production plant and power production expenses as classified pursuant to the Uniform System of Accounts for such utilities as adopted and prescribed by the Public Service Commission of Indiana and in effect as of January 1, 1974.

IC 6–2–1–39(b)(6) and (16).

Transactions of public utilities which are subject to the sale and use tax are described in IC 6–2–1–38(c). This section also specified certain activities which are excepted from taxation. Deleting the irrelevant portions, this section provides:

Every person engaged as a public utility in furnishing or selling electrical energy . . . to consumers for domestic or commercial consumption shall be and constitute a retail merchant thereto, and the gross income received therefrom, *except that part thereof received from sales . . . to other public utilities described in subsections (c), (d), and (e) of this section . . .* shall constitute gross income of a retail merchant received from selling at retail . . . (Emphasis added.)

The Department maintains that only those utilities which are described in IC 6–2–1–38(c) are entitled to the exemption contained in IC 6–2–1–39(b)(16).

The Department asserts that in order to be characterized as a public utility, the utility must provide power to "consumers for domestic or commercial consumption". In essence, the Department argues that IKEC must sell electricity directly to consumers in order to qualify for an exemption.

■ The Department's position is inconsistent with the statute, the regulations, as well as the facts. The language of IC 6–2–1–38(c) applies to those utilities which either furnish or sell electrical energy to consumers. In construing legislation, a court must reasonably interpret the statutory language to discover the legislative intent. The use of the word furnish certainly evidences an intent by the legislature to include activities beyond direct sales to consumers of electricity. The legislature demonstrated its ability to establish narrow statutory exemptions to the sales and use tax when it adopted the "double direct" standard of IC 6–2–1–39(b)(6). *See, Indiana Department of State Revenue v. RCA Corp.*, (1974) 160 Ind.App. 55, 310 N.E.2d 96. There is nothing within IC 6–2–1–38(c) to require that a person must sell electricity directly to consumers in order to be a public utility. We believe that the use of the word "furnish" allows utilities with indirect sales to consumers to be characterized as a public utility.

The regulations are inconsistent with the Department's position. "Public utility" is defined in 45 IAC 2–2–7 as:

> The term "public utility" as used in this regulation means any organization which is engaged in the furnishing or selling of electricity, natural or artificial gas or mixtures thereof, water, steam or steam heating, and having the right of eminent domain or subject to government regulation in connection with the furnishing of public utility services.

There is nothing within this regulation to suggest that IKEC must sell electricity directly to consumers in order to be characterized as a public utility.

In answering IKEC's complaint, the Department admitted that IKEC is "engaged in the generation and transmission of electricity and is a public utility within the definition of that term as contained in the Public Service Commission Act". With this admission, it is obvious that IKEC is a "person engaged as public utility". While IC 6–2–1–38(c) describes those activities of public utilities subject to the sales and use tax, this section also specifically excepts certain activities from taxation. The Department has admitted in interrogatories that IKEC sells electrical energy to other public utilities. It is not disputed that the purchaser is a public utility. IKEC is not subject to taxation on this issue, because IC 6–2–1–38(c) specifically excepts the sale to other public utilities. Even if this court were to accept the Department's position, the trial court's judgment must still be affirmed. If we accept the position that IKEC is not a public utility, then IKEC is not a retail merchant pursuant to IC 6–2–1–38(c) and therefore, not subject to taxation.[1]

IKEC is not subject to taxation because of the provisions of IC 6–2–1–38(c). The trial court determined that IKEC qualified for the exemption contained in IC 6–2–1–39(b)(16). The Department contends that in order to qualify for this exemption, one must be a public utility. The trial court ruled that IKEC was a public utility and entitled to an exemption. The Department's position and the trial court's ruling regarding this issue is incorrect.[2] There is nothing within the language to suggest that one must be a public utility in order to qualify for IC 6–2–1–39(b)(16). To meet this exemption, the taxpayer must demonstrate that it has made a sale of tangible personal property to a public utility, as de-

---

1. The Department has failed to demonstrate how IKEC would be subject to taxation if it is not a retail merchant. We believe that IKEC is a public utility and therefore, a retail merchant, because of the regulations and the admissions of the Department.

2. The trial court's incorrect holding on this issue is harmless error because of our previous ruling concerning IC 6–2–1–38(c).

scribed in IC 6–2–1–38(c), which is directly used by the utility in the direct production of electrical energy. In order to reach this result, the trial court would have needed to determine that electricity constitutes tangible personal property and was classified as a power plant and power production expense. Such a determination was not made and the trial court's ruling on this issue was incorrect. Due to our interpretation of IC 6–2–1–38(c), it is not necessary to determine whether electricity constitutes tangible personal property.

The trial court also held that IKEC was entitled to the exemption contained in IC 6–2–1–39(b)(6). The trial court ruled that as a matter of law, those purchases directly used in the direct production of electricity pursuant to this section are those purchases which are classified as power plant and power production expenses pursuant to the Uniform System of Accounts adopted by the Public Service Commission. The language of IC 6–2–1–39(b)(6) fails to support the trial court's ruling. The Uniform System of Accounts is discussed in IC 6–2–1–39(b)(16), but it is not mentioned in subsection (6) and the trial court's ruling on this issue was incorrect. This error is harmless because of our interpretation of IC 6–2–1–38(c).

The trial court also held that IKEC was entitled to interest to be computed at eight [8] percent interest from November 21, 1977, to December 31, 1980, when the interest rate changed to twelve [12] percent. The computation of interest after December 31, 1980, is to be computed at the higher rate. The Department contends the trial court erred in its determination because the interest prior to January 1, 1978 was six [6] percent. Our supreme court addressed a similar issue in *Indiana Dept. of Revenue v. Glendale-Glenbrook Assoc.*, (1981) Ind., 429 N.E.2d 217, where the court ruled that it was erroneous to apply the higher rate of interest prior to the effective date of the amending statute. We find this ruling dispositive of the present issue and hold that the trial court erroneously awarded interest at eight percent prior to January 1, 1978.

The final issue raised by the Department is whether the trial court erred by awarding costs to IKEC. The Department cites *Dept. of Revenue v. American Motorists' Insurance Co.*, (1979) Ind.App., 396 N.E.2d 907, as authority that the state does not have to pay costs. In *American Motorists'*, the court recognized that taxing costs against the State without specific authority is contrary to law. IKEC argues that IND. CODE 6–2–1–19(a) constitutes such authority. This section, in relevant part, provides:

> In any suit to recover taxes paid, or to collect taxes imposed under the provisions of this act, the court shall adjudge costs to such extent and in such manner as may be equitable.

When a statute is clear and unambiguous, there is no necessity to apply the rules of construction other than the rule that words and phrases shall be taken in their plain, ordinary, and usual sense, *State v. Bress*, (1976) 169 Ind.App. 397, 349 N.E.2d 229. The language, of IC 6–2–1–19(a) grants the trial court the discretion to award costs in tax refunds actions. *American Motorists, supra*, is distinguishable because it was not brought pursuant to IC 6–2–1–19(a). The trial court did not err in awarding costs against the State because the suit was pursuant to IC 6–2–1–19(a).

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

RATLIFF, P. J., and NEAL, J., concur.