**INDIANA DEPARTMENT OF STATE REVENUE, Defendant-Appellant,**

v.

**AMAX, INC. Through AMAX COAL COMPANY, a division, Plaintiff-Appellee.**

**No. 49A02–8703–CV–00127.**

Court of Appeals of Indiana, First District.

Oct. 15, 1987.

Rehearing Denied Nov. 12, 1987.

Linley E. Pearson, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for defendant-appellant.

G. Daniel Kelley, Jr., Barton T. Sprunger, Ice Miller Donadio & Ryan, Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Indiana Department of State Revenue appeals a decision which allowed an exemption from state gross retail tax and use tax and which found that haulage rock and haulage road graders were directly used or consumed in the direct production of personal property. We affirm.

### FACTS

AMAX, Inc. operates several surface coal mines in Indiana. Each mine typically consists of drainage diversion ditches, open pits up to several square miles in area, a preparation plant, railroad line, and an access road for transporting coal to AMAX's customers. The surface mining activities encompass an integrated series of operations for removing raw coal and its impurities from pits and transforming raw coal into saleable form.

The process begins with removal of layers of soil and rock to expose a coal seam. Raw coal and impurities are then loosened and loaded into specially manufactured haulage trucks which transport the material over private haulage roads within the mine to a preparation plant. After numerous processing steps, the coal is stored in a silo from which it is delivered to railroad cars and highway trucks. AMAX has never sold coal in the form in which it is removed from surface pits. The coal becomes a marketable product only after undergoing further processing steps at the preparation plant.

In AMAX's surface mining operations, the haulage trucks and roads are the connecting link between the pit and the preparation plant. AMAX's operations in Indiana require that it continuously build, maintain, and reclaim haulage roads during the working life of its surface mines. Normally, in the initial stages of a mine, haulage roads are comparatively short, approximately one quarter (1/4) mile in length. As coal is mined, the pit faces recede from the preparation plant, requiring continuous extension of the haulage roads. The roads are used only during the working life of the mine and are removed when the land upon which the mine is located is reclaimed. AMAX is required, pursuant to the Surface Mining Control and Reclamation Act (Public Law 95–87, H.R. 2, 30 U.S.C. § 1201 *et seq.*) and the Indiana Reclamation Act and regulations (IC 13–4.1–1–1 *et seq.* and 310 IAC 12–1 *et seq.*) to reclaim all mined lands, including land used for haulage roads.

AMAX's haulage trucks are purchased and used exclusively to transport raw coal from the pit to the preparation plant and could not be licensed for highway use. Each truck's weight ranges from approximately 70 to 110 tons empty, and each one can carry payloads of 110 to 180 tons for total gross weights of up to 290 tons. Consequently, the construction of haulage roads capable of handling such weight is a necessary and integral part of AMAX's mining operation. The haulage roads are typically 100 feet wide and four (4) feet thick. The rock used to construct these roads is unusable for any other purpose after it becomes part of the roadbed of a haulage road. The haulage road graders are used to reallocate rock which is displaced by the haulage trucks and generally to maintain the haulage roads.

In 1984, the Indiana Department of State Revenue assessed AMAX additional retail tax and use tax for the years 1979 through 1983, treating AMAX as subject to tax for the purchase or use of haulage road rock, graders, and supplies. AMAX timely filed Claims for Refund which the Department denied. AMAX then filed this action, and on December 12, 1986, the trial court found that AMAX was, as a matter of law, entitled to a refund of $261,222.22 in state gross retail tax and use tax plus interest.

## ISSUE

Did the trial court err in concluding that AMAX directly used or consumed haulage rock and haulage road graders in the direct production, extraction, mining, processing, refining, or finishing of personal property so as to be exempt from Indiana gross retail tax and use tax?

## DISCUSSION AND DECISION

The standard of review on appeal of a summary judgment is the same as that used in the trial court. *First Savings and Loan Ass'n v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, 1151, *trans. denied.* A motion for summary judgment will be sustained only where the pleadings and other matters before the court reveal no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C); *Treaster*, at 1151. The parties in this case filed a Stipulation of the Parties; the material facts are not disputed. On appeal, therefore, we need consider only whether the trial court correctly applied the law to the facts. The Indiana Department of State Revenue claims that the trial court erroneously applied an exemption statute when it held that AMAX directly used or consumed haulage rock and haulage road graders in the direct production of personal property so as to be exempt from state gross retail tax and use tax. We disagree.

While exemption statutes are to be strictly construed against the taxpayers, a too narrow construction requires the "mills of justice to grind too fine". *Indiana Dept. of State Revenue v. Cave Stone, Inc.* (1983), Ind., 457 N.E.2d 520, 524 (quoting *Indiana Dept. of State Revenue v. Cave Stone, Inc.* (1980), Ind.App., 409 N.E.2d 690, 699 (Buchanan, C.J., concurring in part and dissenting in part)). The statutes provide in pertinent part:

"Transactions involving manufacturing machinery, tools, and equipment are ex-

empt from the state gross retail tax if the person acquiring that property acquires it for his direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property."

Indiana Code section 6–2.5–5–3.[2]

"Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for his direct consumption as a material to be consumed in the direct production of other tangible personal property in his business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture."

Indiana Code section 6–2.5–5–5.1.[3]

"(a) The storage, use, and consumption of tangible personal property in Indiana is exempt from the use tax if:

.  .  .  .  .

"(2) The property was acquired in a transaction that is wholly or partially exempt from the state gross retail tax under any part of IC 6–2.5–5, except IC 6–2.5–5–24(b), and the property is being used, stored, or consumed for the purpose for which it was exempted."

Indiana Code section 6–2.5–3–4(a)(2).[4]

The Department contends that the statute is ambiguous and that its emphasis on directness requires the court to draw a technical line and find that AMAX's haulage rock and graders were too remote from the production of coal to qualify for the exemption. This court has acknowledged that any ambiguity in the statute lies in locating the line between directness and indirectness. *Department of Revenue v. United States Steel Corp.* (1981), Ind.App., 425 N.E.2d 659, 662. However, the logical and practical distinguishing factor is whether the equipment in question actually exercises some immediate effect on the product or process of production. *Id.* at

662–63. Equipment is not exempt from tax under the statute if its immediate effect is on the "surroundings in which the manufacturing process takes place" and only remotely on the product or process of production. *Indiana Dept. of State Revenue v. RCA Corp.* (1974), 160 Ind.App. 55, 61, 310 N.E.2d 96, 100, *trans. denied.* Thus, we focus on whether the equipment is an integral part of production or processing. *United States Steel Corp.*, at 664.

In this case, the coal mined by AMAX became a marketable product only after undergoing numerous processing steps at the preparation plant located within the mine. In order to produce marketable coal, AMAX had to transport raw coal from surface pits to its preparation plant. AMAX, therefore, used haulage road rock and haulage road graders to build and maintain roads capable of withstanding the tremendous weight of haulage trucks. During the working life of a mine, AMAX continuously maintained and extended these roads to accommodate the receding faces of the surface pits. We note also that AMAX is required by law to reclaim all mined lands, including haulage roads, so the roads were usable for no other purpose than to transport raw coal to the preparation plant during the working life of a mine. Even the rock used to construct the roads was unusable for any other purpose after it became part of a roadbed.

In *United States Steel Corp.*, we held that certain safety equipment was exempt from tax because the equipment in question was so specialized that creation of the product was impossible without it. *Id.* Since steel could be made only because shielded workers were able to work closely with raw materials, the shields not only protected the workers, but also became part of the manufacturing process which operated directly on the product. *Id.* Likewise, in *Cave Stone, Inc.*, our supreme court held that trucks used to transfer crude stone from a quarry to a processing

---

**2.** Now IC 6–2.5–5–3(b). Prior to recodification IC 6–2–1–39(b)(6).

**3.** Now IC 6–2.5–5–5.1(b). Prior to recodification IC 6–2–1–39(b)(10).

**4.** Prior to recodification IC 6–2–1–43.

area were exempt from tax because the transportation was an integral and essential part of the transformation of crude stone into a marketable product. *Cave Stone, Inc.*, at 524. The court stated that unless the crude stone was transported from the quarry to the crusher to the stockpile, no production of aggregate stone could occur, and the equipment, therefore, had an immediate effect upon the stone. *Id.*, at 526.

Similarly, AMAX's haulage rock and haulage road graders made it possible for AMAX to produce marketable coal. Due to the unique nature of AMAX's haulage trucks and the laws concerning reclamation of mined lands, haulage roads had to be built specially before production could begin, maintained during the mine's active life, and destroyed when the mine was exhausted. Without the proper construction and maintenance of haulage roads, marketable coal could not be produced from AMAX's surface mines. The facts in this case clearly support a finding that AMAX's haulage road rock and haulage road graders and suppliers were an integral part of production or processing. The materials and equipment in question were directly used or consumed by AMAX in the direct production of personal property so as to be exempt from state gross retail tax under IC 6–2.5–5–3 or IC 6–2.5–5–5.1 and exempt from use tax by IC 6–2.5–3–4 (or the predecessors of those statutes).

The judgment of the trial court is affirmed.

ROBERTSON, J., and MILLER, P.J., concur.